Case 16.—ACTION BY KENTUCKY LIVE STOCK BREEDERS' ASSOCIATION AGAINST S. W. HAGER, AUDITOR, FOR A MANDAMUS TO PAY $15,000 APPROPRIATED TO THE STATE FAIR.—March 15.

## Kentucky Live Stock Breeders' Association v. Hager, Auditor.

. Appeal from Franklin Circuit Court.

Judgment for defendant. Plaintiff appeals. Reversed.

Appropriations—State Fair — Constitutional Provisions — Special Laws—Title to Act—Public purpose.

1. Appropriations — State Fair — Constitutional Provisions — Act March 29, 1902, p. 243, c. 112, providing for the establishment and maintenance of a State Fair, to be under the management and control of a specified live stock breeders' association, an existing corporation, is not a "local or special" act "to grant a charter to any corporation," or "amend the charter of any

existing corporation," within the inhibition of Constitution, sec. 59, sub-division 17.

2. Special Laws—Neither does the act violate Constitution, sec. 59, sub-division 29, declaring, "In all other cases where a general law can be made applicable, no special law shall be enacted."

3. Title to Laws—The provisions of act March 29, 1902, p. 243, c. 112, for the establishment and maintenance of a State Fair, to be under the control and management of a specified, existing live stock breeders' association, are germane to the subject of the act expressed in the title, "An act to provide for the improvement and development of the live stock, agricultural and kindred interests by the establishment and maintenance of a State Fair."

4. Public Purpose—Act March 29; 1902, p. 243, c. 112, provides for the establishment and maintenance of a State Fair, to be under the control and management of a live stock breeders' association—an existing corporation—for the development of live stock, agricultural, and kindred interests of the State, and appropriates $15,000 annually, to be expended for the payment of premiums. Held, That the appropriation is for a public purpose, and within the power of the Legislature.

Nunn, J., dissenting.

J. EMBRY ALLEN, attorney for appellant.

### POINTS AND AUTHORITIES.

1. The expenditure of public funds for the purpose of exhibiting the various resources of the State, either at a State Fair or at a great national or world's exposition, tends to develop the material resources of the State; to stimulate commercial enterprise; to educate the people to enlightened methods of agriculture, stock raising, &c., and serves a great and necessary purpose to the public in keeping the State and its people abreast of the times in the march of civilization, enlightenment and material development, and is, therefore, in the truest sense of the word, an expenditure of public funds for public purposes. Consequently such an expenditure of public funds does not violate sec. 171 of the Constitution, which declares that  *  *  *  "taxes shall be levied and collected for public purposes only."  *  *  *  (Norman, Auditor v. Ky. Board of Managers, 93 Ky., 537; Hager, Auditor v. Ky. Children's Home Society, 26 Ky. Law Rep., 1133; State v. Cornell, 53 Neb., 556, 74 N. W., 59; Downing, et al. v. Ind. St. Board Agriculture, 28 N. E., 123; Minneapolis v. Janney [Minn.], 90 N. W., 312; Town of Pennington v. Park, 50 Vt., 178; Shelby County, et al. v. Tenn. Centennial Exposition, 36 S. W., 694; Daggett v.

Kentucky Live Stock Breeders' Association v. Hager, Auditor.

Colgan, 92 Cal., 53, 28 Pac., 51; Sharpless v. Mayor of Philadelphia, 21 Pa. St., 147.)

2. To justify a court in declaring a tax invalid or an appropriation unconstitutional on the ground that the tax was not imposed or the appropriation made for a public purpose, the absence of a public interest, in the purpose for which the tax was imposed or the appropriation made, must be so clear and palpable as to be immediately perceptible to every mind.   (State v. Cornell, supra; Sharpless v. Mayor, supra; Chaney v. Hooser, 9 B. Monroe, 345; Walker v. City of Cinn. 21st Ohio St. R., 14; Cooley's Constitutional Lim., 128, 129, 171; Broadhead v. City of Milwaukee, 19 Wis., 658; People v. East Saginaw, 33 Mich., 164; Stockton & V. R. Co. v. Stockton, 41 Cal., 147; Loan Association v. Topeka, 20 Wall, 664; Weismer v. Village of Douglass, 64 N. Y., 91; Amer. & Eng. Ency. of Law, 1st Ed., vol. 25, p. 90, notes.)

3. If the object and purpose for which the tax is levied or the appropriation is made is a public one, it is immaterial whether the money is applied through the agency of the public officials of the State or through private persons and corporations; and the expenditures of public funds in this manner is not a giving, pledging or loaning of the State's credit, nor a donation of public funds to any company, corporation or association in violation of sec. 177 of the Constitution.   (Hager v. Ky. Children's Home, supra; Downing v. Ind. St. Board of Agriculure, supra; Minneapolis v. Janney, supra; Sharpless v. Mayor, and Daggett v. Colgan, supra; Amer. & Eng Enc. of Law, vol. 25, p. 88, notes.)

4. The General Assembly has all power not expressly withheld from it by the Constitution.   (Norris v. Climer, 2 Barr, 285; Tatham v. Philadelphia, 11 Pa., 276; Hill v. East Hampton, 140 Mass., 381, 5 N. E., 157; Hubbard v. Tauntor, 140 Mass., 467, 5 N. E., 157; Daggett v. Colgan, supra.)

5. The only limitation on the power of the Legislature to levy taxes or appropriate public funds is that the object or purpose for which it is done shall be a public one.   (Supported by authorities cited above.)

6. The Legislature is the sole judge of the propriety and wisdom of appropriations like the one under consideration, and if the object and purpose of the appropriation is to serve a public end, the court will not inquire as to whether that end has, in fact, been served or not; or whether the advantages and benefits have been commensurate with the expenditure.   That matter is one for the people to deal with through their representatives.   Where there is a doubt about the constitutionality of a statute the presumption is in favor of its legality, and the courts will not declare it invalid unless its invalidity is apparent and flagrant.   (Supported by authorities cited above.)

N. B. HAYS, Attorney General, and Chas. H. Morris for appellee.

Our contention is that the act is unconstitutional for the reasons hereinafter assigned:

1. It is in conflict with sub-secs. 17 and 29 of sec. 59 of the present Constitution, which reads thus:

"Sec. 59. The General Assembly shall not pass local or special acts concerning any of the following subjects, or for any of the following reasons, namely:    *    *    *

"Subsec. 17. To grant a charter to any corporation, or to amend the chapter of any existing corporation.    *    *    *

"Sub-sec. 29. In all other cases where a general law can be made applicable, no special law shall be enacted."

This act purports to create a State Fair—which is a myth—and to constitute the appellant the agent of the Commonwealth to manage the affairs of this myth, which is nothing more or less than the "Kentucky Live Stock Breeders' Association," and the act is one in fact appropriating $15,000 to said association under the specious name of a "State Fair."

We believe, also, that the said act is unconstitutional—if it is entitled to the consideration due to legislative acts—for the further reason of its being in conflict with sec. 51 of the Constitution.

"Sec. 51. No law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title."
*    *    *

A public purpose which will authorize the appropriation of public money to promote it must be a general and common public benefit.

2. The appropriation under said act is in conflict with, and contrary to, sec. 3 of the Bill of Rights. Sec. 3 of said Bill of Rights is as follows, in part:

"Sec. 3. All men, when they form a social compact, are equal; and no grant of exclusive, separate public emoluments or privileges shall be made to any man or set of men, except in consideration of public service."

The legislative power of taxation is not without limit, and the courts may examine and determine whether the Legislature has acted within its powers and scope.

3. For the third reason, we say that the act is in conflict with, and in direct violation of sec. 177 of the present Constitution. This section in full is as follows:

"Sec. 177. The Commonwealth Not to Lend Its Credit or Become Stockholder in Corporation.—The Credit of the Commonwealth shall not be given, pledged or loaned to any individual, company, corporation or association, municipality or political sub-division of the State; nor shall the Commonwealth become an owner or stockholder in, nor make donation to, any company, associa-

tion or corporation; nor shall the Commonwealth construct a railroad or other highway."

It seems to us that the Constitutional Convention, and the people of Kentucky, could not have prohibited such measures as this in plainer and stronger words than those used in the said section.

In conclusion it is the contention of the State that the appropriation in question was not, and is not, for a public purpose or use, but that it is a gift pure and simple, by the toiling masses of this Commonwealth, through the same, and under cover of law, to advance the interests of the Kentucky Breeders' Association, and that the Legislature had no constitutional right to levy a tax upon the people of Kentucky, in order to raise funds for this private corporation.

### AUTHORITIES CITED.

Michigan Sugar Co. v. The Auditor General, 83 Am. St. Rep., 354; People v. Township Board of Salem, 20 Mich., 452, 4 Am. Rep., 400; Weismer v. Village of Douglas, 19 N. Y., 98; Dodge v. Mission Township, 107 Fed. Rep., 829; Allen v. Inhabitants of Jay, 60 Me., 124; Tyler v. Beecher, 44 Vt., 648; in re Eureka Basin Warehouse & Mfg. Co., 96 N. Y. 42; Cypress Pond Draining Co. v. Hooper, &c., 2 Metc., 350.

OPINION BY CHIEF JUSTICE HOBSON—Reversing.

The following act became a law without the signature of the Governor on March 29, 1902 (Acts 1902, p. 243, c. 112) : "An act to provide for the improvement and development of the live stock, agricultural and kindred interests by the establishment and maintenance of a State Fair.

"Whereas, the State of Kentucky has fallen behind her sister States in the development of her live stock and her agricultural products, and has lost the prestige and high standing her live stock once gave her, and whereas, in former times breeders from all parts of the United States and even foreign foreign countries, looked to Kentucky for pure bred stock to improve their herds and flocks; and, whereas, as our neighboring states, viz., Ohio, Indiana. Illinois and Missouri, are rapidly forging ahead of us as

vol. 120—9

breeders of live stock by the annual appropriations of large sums to equip and maintain State fairs for the exhibition of the products of their respective States, and the payment of premiums of such exhibits, we deem it necessary to establish and maintain a State Fair in Kentucky for the exhibition of live stock and the products of the farm, orchard, dairy, poultry, and such other interests as may be helpful to all the people, of our State; therefore, be it enacted by the General Assembly of the Commonwealth of Kentucky:

"Sec. 1. That an annual State Fair for the exhibition of agricultural, mechanical, horticultural, dairy, forestry, poultry and live stock, be, and the same is hereby created, to be known as the Kentucky State Fair.

"Sec. 2. That in order to relieve the said State Fair of any political appearance, the same is to be under the management and control of the board of directors of the Kentucky Live Stock Breeders' Association, a corporation organized and existing under the laws of the State of Kentucky (having its principal office in the city of Louisville), and their successors in office, which board of directors are elected annually by the stockholders. of the said association.

"Sec. 3. The sum of fifteen thousand dollars annually is hereby appropriated, which appropriations are to be used as premiums alone; the said fair to be held at such time and place as the board of directors of the Kentucky Live Stock Breeders' Association may determine, and the said Kentucky Live Stock Breeders' Association are to pay all other expenses incurred.

"Sec. 4. The sum of fifteen thousand dollars is to be paid annually on the first day of July, at which time the Auditor shall draw his warrant on the State

Treasurer in favor of the treasurer of the Kentucky
Live Stock Breeders' Association.

"Sec. 5. The treasurer of the said Kentucky Live
Stock Breeders' Association shall execute bond with
the State of Kentucky in the sum of fifteen thousand
dollars for the faithful disbursement of such money
according to the provisions of this act.

"Sec. 6. The treasurer of the Kentucky Live Stock
Breeders' Association shall, within sixty days after
holding such annual State Fair, render to the Auditor
of the State of Kentucky an itemized statement show-
ing the disbursement of such appropriation, which
itemized statement shall be embodied in the State
Auditor's annual report.

"Sec. 7. Any part of the money unexpended shall be
refunded by the treasurer of the said association to
the State of Kentucky.

"Sec. 8. Any profits derived from the fair shall go
into a sinking fund to be used for succeeding fairs of
the association."

The Kentucky Live Stock Breeders' Association is
a corporation created under the laws of this State,
with its principal office in the city of Louisville. The
nature of the business of the corporation is thus stated
in its original articles of incorporation: "The nature
of the business to be carried on by the corporation
shall be encouraging and prompting interest in breed-
ing, management and general improvement and de-
velopment of pure bred live stock and holding annual
exhibitions and sales of live stock at Louisville, Ken-
tucky." This was amended on January 13, 1903, so
as to read as follows: "The nature of the business
to be carried on by the corporation shall be encourag-
ing and promoting interest in breeding, management
and general improvement and development of pure

bred live stock and holding annual exhibitions and sales of live stock.''

The Auditor of the State in the year 1904 declined to draw his warrant on the Treasurer in favor of the treasurer of the Kentucky Live Stock Breeders' Association for $15,000, as provided in the act, on the ground that the statute was unconstitutional, and this action was filed to obtain a mandamus directing him to do so. · The circuit court dismissed the petition, and the plaintiff appeals.

The only question to be determined on the appeal is the constitutionality of the statute. It is insisted that is in conflict with sub-secs. 17 and 29 of sec. 59 of the Constitution:

''Sec. 59. The General Assembly shall not pass any local or special acts concerning any of the following subjects, or for any of the following reasons, namely: * * * Sub-sec. 17. To grant a charter to any corporation, or to amend the charter of any existing corporation. * * * Sub-sec. 29. In all other cases where a general law can be made applicable, no special law shall be enacted.'' It is urged that the purpose expressed in the title of the act is the establishment and maintenance of a State Fair, and that the Legislature had no power to speak into existence a State Fair. The act does not create the Kentucky Live Stock Breeders' Association. That corporation is already in existence. The act, in effect, makes an appropriation, and directs that a State Fair shall be held. The Kentucky Live Stock Breeders' Association is simply an agency selected by the Legislature to carry out its purposes. The prohibition of special legislation was not intended to prevent the Legislature from legislating on a special subject, and we are unable to see how a general law could be passed providing for a State Fair in substantially any other

way. The act passed in the aid of the World's Fair at Chicago and the World's Fair at St. Louis were not less special legislation than the act before us. Nor does the act relate to more than one subject. The creation of the fair and the naming of the agency which was to carry out the legislative purposes are germane to the subject expressed in the title of the act, and not foreign to it. The entire act relates to one subject.

It is also insisted that a State Fair is not a public purpose for which the money of the State may be appropriated by the Legislature, and that the act merely gives a bounty of $15,000 to appellant. The appropriation to the World's Fair was sustained by this court (Norman v. Board of Managers, 93 Ky., 537, 14 Ky. Law Rep., 529; 20 S. W., 901, 18 L. R. A., 556); and, if the Legislature may appropriate money in aid of a fair held in another State, to properly represent the State in such a fair, it is hard to see how a fair held within the State, to make an exhibit of the products of the State, is not equally a public purpose. Such legislation has been sustained by the current of authority in the other States of the Union having Constitutions substantially the same as ours. (Daggett v. Colgan, 92 Cal., 53, 28 Pac., 51, 14 L. R. A., 474, 27 Am. St. Rep., 95; State v. Cornell [Neb.], 74 N. W., 61, 39 L. R. A., 513, 68 Am. St. Rep., 629; Sharpless v. Mayor of Philadelphia, 21 Pa., 147, 59 Am. Dec., 759; City of Minneapolis v. Janney [Minn.], 90 N. W., 312; Downing v. Indiana State Board of Agriculture, 129 Ind., 443, 28 N. E., 123, 614, 12 L. R. A., 664; Shelby County v. Tennessee Centennial Exposition [Tenn.], 36 S. W., 694, 33 L. R. A., 717; Bennington v. Park, 50 Vt., 178.)

In House of Reform v. City of Lexington 112 Ky., 171, 64 S. W., 350, 23 Ky. Law Rep., 1470, and Hager,

Auditor v. Children's Home Society, 119 Ky., —, 83 S. W., 605, 26 Ky. Law Rep., 1135, we held that the State might appropriate money to a public purpose, and make an existing corporation its agent for the disbursement of the appropriation, just as it may appoint other agencies for this purpose.   We adhere to the rule laid down in those cases, for the reasons there given.

The learned Attorney General has not referred us to any case holding an act making an appropriation for a State Fair unconstitutional.   He relies mainly on Michigan Sugar Company v. Auditor General (Mich), 83 N. W., 625, 56 L. R. A., 329, 83 Am. St. Rep., 354.   In that case the Supreme Court of Michigan held that an act paying a bounty of one cent a pound to the manufactures of beet sugar was unconstitutional, on the ground that to use the public money to build up a private business was to take private property not for public, but for private, purposes, by act of the Legislature.   We do not doubt the soundness of the decision, but it has no application to an appropriation for a State Fair, which is a public purpose.   He also refers us to several cases in which it was said that the money of the people belongs in the custody of the agents of the people, and can not by the legislative act be put into the hands of those over whom the State has no control.   Such expressions must be confined to the state of case presented to the court when they were used.   The Legislature of a State has all power not prohibited by the Constitution.   There is in our Constitution no limitation on the power of the Legislature to create agencies for the execution of its purposes, or to select such as it deems fit.   The power has often been exercised.   It will be observed that by the act in question the treasurer of the breeders' association is required to

execute bond with the State of Kentucky in the sum of $15,000 for the faithful disbursement of the money according to the provisions of the act; that any part of the money unexpended must be refunded to the State; and that within 60 days after the holding of the annual fair the treasurer shall render to the Auditor of the State an itemized account of the disbursement of the money; and that this itemized statement shall be embodied in the Auditor's annual report. It will thus be seen that the treasurer of the breeders' association holds the $15,000 by virtue of the act, and under his bond. He can not apply the money for any other purpose, except the payment of premiums as directed in the act, and any surplus left is to be returned to the treasury. He is, therefore, under the control of the State, his powers are defined by the statute, and the Legislature may at any time, by repealing the act, have any amount left in his hands unexpended returned to the treasury. The effect of the act would not be different if the Legislature had provided that the premiums awarded at the fair should, to the extent of $15,000, be paid directly from the State treasury to the person to whom the premium was awarded. The treasurer of the breeders' association is simply made the disbursing agent of the money, instead of the State Treasurer, for the convenience of the public service, and no money of the State is placed in the hands of any one not subject to State control.

Judgment reversed and cause remanded for a judgment as herein indicated.

Whole court sitting.

Judge Nunn, dissents.