DUDLEY P. BABCOCK, Appellant, *v.* THE STATE OF NEW YORK, Respondent.

Third Department, December 29, 1919.

State — constitutionality of enabling act giving relief on barred claim — Court of Claims — limitation of jurisdiction — claim for injuries due to defective appliances — essential elements of recovery — doctrine of respondeat superior — applicability to State — effect of section 264 of Code of Civil Procedure — State Commissioner of Highways and assistant engineer in Department of Commission of Highways not agents of State — master and servant — safe appliances — selection by servant of unsafe appliances when safe appliances are furnished — fellow-servant selecting unsafe appliances — enabling act valid — power of Legislature to legalize private claims against State founded on equity and justice — claim for injury received in carrying out orders of State Department — reasonable care — appeal — review of decision rejecting claim as unjust — power of courts to pass on validity of claim recognized by enabling act — claimant not chargeable with fault of fellow-servant.

An enabling act which provides no new cause of action but simply recognizes a claim which is barred by the Statute of Limitations, is ineffective, under article 7, section 6, of the State Constitution, to give relief to the claimant.

While the jurisdiction of the Court of Claims, independently of a special statute, covers all private claims against the State, it is subject to the limitation imposed by section 264 of the Code of Civil Procedure that in no case shall any liability be implied against the State except upon such legal evidence as would establish liability against an individual or a corporation in a court of law or equity.

One who seeks to recover damages from the State for injuries received by reason of its failure to provide him with tools and appliances suitable and

safe for his work, must establish that the relationship between himself and the State was the precise relationship of master and servant, and that the use of the unsafe appliances by the claimant was due to the neglect of the master State to provide tools and appliances which were suitable and safe.

The doctrine of *respondeat superior* is not applicable to the State so as to make it liable for a tort committed by those in public service, for the State as a sovereign cannot be guilty of a wrong by imputation for the acts or omissions of officers considered as agents.

But the limitation contained in section 264 of the Code of Civil Procedure inferentially made the State liable for torts where citizens under the same circumstances would be liable, so that the doctrine stated of the inapplicability to the State of the principle of *respondeat superior* holds good only to the extent that, being a principle of the law of agency, it generally has no application to the State, for the reason that ordinarily public officers are not servants, and the State is not their master.

The State Commissioner of Highways in building public roads is an independent public officer, and particularly so when he constructs no roads but merely engages his subordinates in drafting, surveying and mapping, that roads may be built by others.

An assistant engineer in the Department of the Commission of Highways working under the direction of the State Commissioner of Highways, is not, while so engaged, an agent of the State.

Accordingly, where the claimant, an assistant engineer in the Department of the Commission of Highways, was engaged in making preliminary surveys and maps for the construction, under contract, of a State highway along the cliffs of Storm King Mountain at the time he received the injuries on which his claim is based, the relation of master and servant did not exist between him and the State.

The claimant, with three other engineers from the Department of the Commission of Highways, was directed to make a preliminary survey of a State highway to be constructed along the cliffs of Storm King Mountain, and was given charge of the survey. Other duties intervening, he did not accompany his fellow-engineers but met them near the site of the proposed highway and the party, taking the ropes and other needed articles which had been forwarded, proceeded to the mountain. In the course of the survey, it became necessary for the claimant to descend the side of a very steep cliff, and in order to do so he selected a rope about three hundred feet long and tied it to a tree near the edge of the cliff, and thereby lowered himself to a small projecting shelf on the side of the cliff. As the first rope was not long enough to permit him to descend to the point where he could perform the work required, he signaled to his fellow-engineer at the top of the cliff for another rope, and said engineer selected one of two ropes, which rope was an inch in diameter and apparently sound, although discolored by use, and lowered it to the claimant who fastened it to a tree. The claimant swung out upon the last rope and had gone down but a few feet when it parted and he fell receiving the injuries on which he bases his claim. The rope that was not used was sound and would have held the

claimant in his descent. If it be assumed that the relationship between the claimant and the State was that of master and servant, no liability arose for failure to provide suitable and safe appliances, for the State having furnished ropes of suitable strength, the act of selecting the individual rope was a mere matter of detail of the work, for which the State was not responsible.

The act of the engineer stationed at the top of the cliff in selecting the unsound rope was the act of a fellow-servant, so that if the relationship of master and servant existed the State was absolved from all blame for the injury received.

Thus it appears that the claimant by the application of principles of law obtaining in analogous cases between citizens had no claim enforcible in the Court of Claims under the provisions of section 264 of the Code of Civil Procedure, and hence the Legislature was not inhibited by section 6, article 7 of the State Constitution from enacting a law affording the claimant particular relief.

Although the Legislature may not make a gift of the moneys of the State nor itself audit or allow a private claim against the State, it may recognize and legalize private claims, which, though unenforcible through the application of legal principles, are yet founded upon equity and justice, and it may empower the Court of Claims to audit and allow them.

The injuries of the claimant arising from the peril of descending a precipitous cliff upon a rope, under orders of a department of the State, furnish valid grounds for the passage of an act recognizing a claim for damages against the State.

The claimant at the time of the accident was in the exercise of "reasonable care under the circumstances" as provided by the enabling act, for when he received the rope which was lowered to him, he was in no position to make a test thereof before he used it, and if there was any negligence in selecting the unsound rope, it was the negligence of the claimant's fellow-engineer at the top of the cliff.

A decision of the Court of Claims rejecting a claim presented under an enabling act as unjust and inequitable is reviewable on appeal.

If the Legislature constitutionally recognizes the justice and equity of a claim on condition that certain facts are proven, it retroactively provides a principle of law, which, if the proven facts are the facts of the statute, makes the claim legal and it must be enforced.

If the Legislature attempts to legalize an unconscientious claim, its effort is directed toward making a gift of the moneys of the State, and this it may not do under the Constitution, and there is always, therefore, a constitutional question involved in the legislative recognition of a claim, and to this extent the question of the justice and equity of the claim survives to the courts.

On the trial of a claim presented against the State under an enabling act, for personal injuries received by the claimant, the ordinary rules in an action for negligence are not applicable, and the claimant is not chargeable with the fault or negligence of a fellow-servant.

COCHRANE, J., dissents.

APPEAL by the claimant, Dudley P. Babcock, from a judgment of the Court of Claims in favor of the defendant, entered in the office of the clerk of said court on or about the 19th day of March, 1919, dismissing the claim herein on the merits, on the ground that the claimant was guilty of contributory negligence.

*Walter E. Ward* [*Andrew J. Nellis* of counsel], for the appellant.

*Charles D. Newton,* Attorney-General [*B. F. Sturgis,* Deputy Attorney-General, of counsel], for the respondent.

H. T. KELLOGG, J.:

The claimant was first assistant engineer in the Department of the Commission of Highways, which was engaged in making preliminary surveys and maps for the construction under contract of a State highway along the cliffs of Storm King Mountain. Four engineers of the department, including the claimant, were directed to go to the site of the highway, locate its course, and mark its line upon the rocks. The claimant was given charge of the survey, but other duties required him to go immediately to Binghamton. After making this trip he met his fellow-engineers at Cornwall. Surveyors' instruments, ropes and other needed articles had been forwarded to Cornwall, and with this duffel the party of four proceeded from Cornwall to Storm King. Two of the engineers stationed themselves with their instruments in such places that they could sight along the cliffs and give to claimant, who, with an engineer named Thompson, had climbed to the top of a ledge, the correct line along the rocks for him to mark. The cliffs at this point sheered off at a drop of 3 feet vertical to 1 horizontal. The claimant and Thompson had carried up three ropes, and selecting a rope 300 feet long they tied it to a tree near the edge of the cliff. The claimant lowered himself upon this rope, until, having come nearly to its end, he found himself upon a projecting shelf barely large enough to stand upon. Discovering that he was not down to the line sighted by the two engineers, he signaled to Thompson to send down another rope. Thompson picked out a rope 100 feet long, and lowered it to the claimant, who tied its end to a

cedar which projected from the shelf. The rope was an inch rope calculated, if sound, to withstand a load of 5,500 pounds. It had been used before, and was discolored by use, though apparently not by decay. The claimant swung out upon the rope, and had gone down not more than 5 feet when the rope parted, dropping him down the cliff 150 feet. His legs and ribs were fractured in many places, and he was otherwise severely injured. The accident happened on the 22d day of April, 1915. Three years afterwards an enabling act was passed by the Legislature permitting claimant to present a claim to the Court of Claims. This act, which became a law on May 10, 1918, so far as material, reads as follows: " Jurisdiction is hereby conferred upon the Court of Claims to hear, audit and determine an alleged claim of Dudley P. Babcock, of the city of Albany, against the State, on account of the following alleged facts: That the claimant, on or about April twenty-second, nineteen hundred and fifteen, while making certain surveys on ledges on Storm King Mountain, in the county of Orange, which he was directed to make by the State Department of Highways, as first assistant engineer of such department, received permanent injuries by falling from and rolling down one of such ledges, though using reasonable care under the circumstances to prevent any such accident. If such facts be proven to the satisfaction of the court, and the court deem it just and equitable that the claimant should be compensated by the State for such injuries, it may determine the extent of the injuries and allow such claim in such sum as it deems to be just and reasonable and render judgment therefor against the State." (Laws of 1918, chap. 608.) The claimant thereupon filed his claim, and, after trial in the Court of Claims, the claim was dismissed. From the judgment of dismissal this appeal is taken.

Assuming that the claimant had a valid claim without the assistance of the enabling act, it was barred before that act was passed. (Code Civ. Proc. § 264.) If he had such a claim it was based upon the analogy of a cause of action in negligence arising between citizens. Such a cause of action would have been barred within three years (Code Civ. Proc. § 383, subd. 5), so that, if the enabling act provided no new cause of action, it was ineffective under the Constitution to give relief

to claimant.   (Const. art. 7, § 6.)   It becomes necessary to inquire, therefore, whether a valid claim, enforcible in the Court of Claims, arose in favor of claimant independently of the special statute.

While the jurisdiction of the Court of Claims independently of a special statute covers all private claims against the State, it is subject to this limitation: " In no case shall any liability be implied against the State, and no award shall be made on any claim against the State except upon such legal evidence as would establish liability against an individual or corporation in a court of law or equity." (Code Civ. Proc. § 264.)   In the application of this test to the claim now made, it will be seen that the solitary principle of the law obtaining in actions between citizens, capable of adaptation to the case of claimant, is that principle which makes a master liable to his servant for the violation of a duty owed to provide him with tools and appliances suitable and safe for his work. The successful application of this principle would depend upon the establishment of two propositions; *first,* that the relationship between this claimant and the State was the precise relationship of master and servant which the identical proof would establish were the party against whom the claim is made an individual or corporation; *second,* if so, that the use of an unsound rope by the claimant servant was due to the neglect of the master State to provide tools and appliances which were suitable and safe.

It was said in *Lewis* v. *State of New York* (96 N. Y. 71) that the doctrine of *respondeat superior* was never applicable to the State, to make it liable for a tort committed by those in the public service.   It was not made clear by the opinion in the case whether the non-applicability of the doctrine was due to the absence of the relationship of master and servant between the State and its officers, or to the incapacity of the State as a sovereign to be guilty of a wrong by imputation from the acts or omissions of officers considered as agents.   The latter was the view taken in *Litchfield* v. *Bond* (186 N. Y. 66), where this language was quoted from *Poindexter* v. *Greenhow* (114 U. S. 270): " It is also true, in respect to the State itself, that whatever wrong is attempted in its name is imputable to its government and not

to the State, for, as it can speak and act only by law, whatever it does say and do must be lawful." Both the *Lewis* and the *Litchfield* cases were decided prior to 1908, when the provision already quoted from section 264 of the Code of Civil Procedure was made a part thereof by chapter 519 of the Laws of 1908. That provision inferentially made the State liable for torts where citizens would be liable, so that the doctrine of the inapplicability to the State of the principle of *respondeat superior*, enunciated in the *Lewis* case, holds good only to the extent that, being a principle of the law of agency, it generally has no application to the State for the reason that ordinarily public officers, or public place holders, are not servants, and the State is not their master. The relationship between the State and its officers is certainly not more like that of master and servant than is the relationship between municipal officers and their municipalities. In municipal law it has been recognized for many years that in some instances public officers are the servants of the municipality, and in some instances not. It has been held that the assessors and collectors of taxes in towns are not the agents of the town, but independent public officers. (*Lorillard* v. *Town of Monroe*, 11 N. Y. 392.) Highway commissioners are independent public officers, and not the agents of the town. (*Morey* v. *Town of Newfane*, 8 Barb. 645; *People ex rel. Van Keuren* v. *Town Auditors*, 74 N. Y. 310.) Subordinates occupying positions under the commissioners of charities and correction of the city of New York are not agents of the city. (*Maxmilian* v. *Mayor*, 62 N. Y. 160.) In this leading case Judge FOLGER said that where the municipality was not engaged in business for its private ends its officers were not agents. " They are not then the agents or servants of the municipal corporations, but are public officers, agents, or servants of the public at large, and the corporation is not responsible for their acts or omissions, nor for the acts or omissions of the subordinates by them appointed." He enunciated this rule: " Where a municipal corporation elects or appoints an officer, in obedience to an act of the Legislature, to perform a public service, in which the corporation has no private interest and from which it derives no special benefit or advantage in its corporate capacity, such officer cannot be regarded as a servant or agent of the municipality, for

whose negligence or want of skill it can be held liable." In *Ham* v. *Mayor* (70 N. Y. 459) it was held that the members of the board of education of the city of New York and their subordinates were not agents of the city. It was said of public officers: "It is only when the duties relate to the exercise of corporate power, and is for the benefit of the corporation, that they are the servants and agents." It was said by Judge EARL in *Tone* v. *Mayor* (70 N. Y. 157) of the board of revision and correction of the city of New York: "In the discharge of their duties the members of that board acted as independent public officers, engaged in the public service." In *Woodhull* v. *Mayor* (150 N. Y. 450) it was held that the city was not liable for the torts of the police, the court saying: "Police officers appointed by a city are not its agents or servants." Nor are the cases which make a city responsible for defects in its streets and sewers subversive of these principles. That liability rests upon the fact that the duty of maintaining streets and sewers is laid upon the city itself, and the city by accepting its franchise agrees to maintain them. (*Conrad* v. *Trustees of Ithaca*, 16 N. Y. 161, note; *Maxmilian* v. *Mayor*, 62 id. 160; *Missano* v. *Mayor*, 160 id. 123.) In *New York & Brooklyn Sawmill & L. Co.* v. *City of Brooklyn* (71 N. Y. 580) it was said: "The general rule may be stated to be that a municipal corporation is only liable for the acts or omissions of officers in the performance of duties imposed upon the principal." Liability in these cases hangs upon the "absolute and perfect" duty cast upon the municipality. (Dillon Mun. Corp. [5th ed.] § 1665.) In other words, they are not cases where faults of servants are imputed to the master, but cases rather where faults of the master cannot be avoided by showing that the acts or omissions were those of subordinates. Dillon says (5th ed. § 1655): "It may be observed, in the next place, that when it is sought to render a municipal corporation liable *for the acts of servants or agents, a cardinal inquiry is, whether they are the servants or agents of the corporation.* If the corporation appoints or elects them, can control them in the discharge of their duties, can continue or remove them, can hold them responsible for the manner in which they discharge their trust, and if those duties relate to the exercise of *corporate* powers, and are for the peculiar benefit of the corporation in its local or

special interest, they may justly be regarded as its agents or servants, and *the maxim of respondeat superior applies.*" None of the facts which in the case of a municipal officer may operate to make him an agent of the municipality obtain in the instance of the State Commissioner of Highways to make him the agent of the State. He is not appointed by the State; he is not removable from office by the State; he is not controlled in the discharge of his duties by the State. While to a certain extent the burden of building and maintaining roads may rest upon him, the State itself is not bound to build them. The State does not own the roads which the Commissioner builds nor the rights of way which he improves, nor property for the improvement of which road work is done. Indeed, road building through public lands is largely forbidden. The State has, therefore, no corporate, private or property interest to serve, and there is no profit which it may gain through road construction. The Commissioner constructs roads for the benefit of the public at large, and in building them the Commissioner clearly is an independent public officer. Particularly is he such an officer when, as in this case, he constructs no roads, but merely engages his subordinates in drafting, surveying and mapping that roads may be built by others. And if the Commissioner of Highways in this instance was not an agent of the State, then neither was the claimant, for the claimant could not have two principals, one the Commissioner and one the State, and be an agent of the State when his own chief was not. (*Maxmilian* v. *Mayor, supra.*) Therefore, I think the relation of master and servant did not exist between this claimant and the State.

Even if we assume that the relationship existed, nevertheless, the State as an employer did not fail in its duty of providing claimant with suitable and safe appliances. It has been held repeatedly that while the employer must furnish to his employees a suitable supply of ropes when ropes are needed, the selection of individual ropes to be used is a mere detail of the work, for which the employer is not responsible. In *Ivers* v. *Minnesota Dock Co.* (84 App. Div. 27) a foreman selected a rope from a sufficient and suitable supply for use upon a derrick. The rope was rotten or unsound at the end thereof, and broke, with the result that an employee was

injured. It was held that there could be no recovery, McLENNAN, J., saying for the court: " If the end of the rope which broke was in such condition that the foreman who selected it and took it from the storeroom ought to have discovered that it was rotten or defective, and he was negligent in not doing so it was the negligence of a coemployee for which the master is not liable." It was held in *Cregan* v. *Marston* (126 N. Y. 568) that there was no liability to a servant through the breaking of a rope where the supply of sound rope available to employees was adequate. In *Vogel* v. *American Bridge Co.* (180 N. Y. 373) workmen were engaged in lifting material by a block and rope. One of them declared a rope unsafe, but the foreman directed its use, with the result that the rope broke and a laborer was injured. It was held that there being a sufficient supply of sound rope the master had performed its duty and there was no liability. In the case now before us it appeared that rope was shipped from Albany to the scene of the work, and that the claimant and Thompson, who went with claimant to the top of the cliff, took with them three ropes, one 300 feet long, and two others 100 feet long. The 300-foot rope selected by claimant was sound, the 100-foot rope selected by Thompson to lower claimant was unsound, while the third rope was afterwards used and proved sound. There was, therefore, on hand on the top of the cliff a sufficient supply of sound rope. The act of Thompson in selecting the unsound rope was an act of a fellow-servant, under the cases cited, so that the employing State was absolved from blame. Therefore, the claimant by the application of principles of law obtaining in analogous cases between citizens had no claim enforcible in the Court of Claims under the provisions of section 264 of the Code of Civil Procedure. Consequently section 6 of article 7 of the State Constitution did not inhibit the Legislature from enacting a law affording him particular relief. (*Munro* v. *State of New York*, 223 N. Y. 208.)

The Legislature, although it may not make a gift of the moneys of the State, nor itself audit or allow a private claim against the State, may yet recognize and legalize private claims, which, though unenforcible through the application of legal principles, are yet founded upon equity and justice, and it may

empower the Court of Claims to audit and allow them. (*Cole v. State of New York,* 102 N. Y. 48; *O'Hara* v. *State of New York,* 112 id. 146; *People ex rel. Swift* v. *Luce,* 204 id. 478; *Munro* v. *State of New York,* 223 id. 208.) In the *Munro* case the claimant, who was employed in one of the insane hospitals maintained by the State, was assaulted and injured by an inmate. It was held that it was equitable and just that the State should indemnify him for his injuries, and that an act of the Legislature, recognizing his claim and authorizing the Court of Claims to audit and allow it, was sufficient warrant for that court to grant an award. If injuries resulting from the hazards of caring for the insane furnished adequate grounds for legislative recognition of a claim against the State, then certainly the injuries of claimant, arising from the grave peril of descending a precipitous cliff upon a rope, under orders of a department of the State, furnished equally valid grounds for the passage of an act recognizing a claim of damages therefor. The act passed on behalf of claimant recited certain facts constituting his claim and provided that if these facts were true and if claimant at the time of his accident was " using reasonable care under the circumstances," the Court of Claims might, if it deemed his claim just and equitable, allow to claimant a reasonable sum for his injuries. The act was strictly within legislative power as determined by the cases cited. The Court of Claims found the precise facts as recited in the act, but disallowed the claim solely on the ground that the claimant did not use " reasonable care under the circumstances," and was contributorily negligent. The claimant did not select the unsound rope in question. He had gone down the sound 300-foot rope to its end, supposing it to be sufficiently long for the purpose. He says: " We found that by referring to Mr. Whipple, that we weren't down far enough, and I called out to one of the men above to throw me another piece of rope, as I wasn't down far enough." Thompson then picked out the unsound rope and lowered it. Claimant was asked by counsel for the State: " Do you know of any reason, if there was any, that prevented Mr. Thompson, if he wanted to, to find out whether that rope, by pulling it, or tying it to a tree, or by any other means, was of such a character as described by Mr. Whipple in his testimony? " And the

claimant answered: " I didn't know of a reason." The following argument was made by the State upon the trial, and correctly represents the situation: " They had three pieces of rope here that were used, and two of them were proven to be good. So there was no necessity of using the poor one, even if it got down there." It will thus be seen that if there was any negligence in selecting the unsound rope it was the negligence of Thompson, not of claimant. The claimant, standing upon a shelf of rock barely large enough to support his feet, on the side of a precipice reaching almost vertically 300 feet above him and 150 feet below him, was not in a position to make a test of the rope let down to him before he used it. It does not seem to me, therefore, that the claimant was in the least negligent under the circumstances. It is claimed that it was within the power of the Court of Claims to reject the claim as unjust and inequitable, and that if they so decided their determination was not reviewable. In the first place, they did not so decide, and in the second, their action was necessarily reviewable. (*Wheeler* v. *State of New York*, 97 App. Div. 276; *American Bank Note Co.* v. *State of New York*, 64 id. 223.) My own view is that if the Legislature constitutionally recognizes the justice and equity of a claim on condition that certain facts are proven, it retroactively provides a principle of law which, if the proven facts are the facts of the statute, makes the claim legal, and that if the claim be legal it must be enforced. In the *Cole* case it was said that the legislative power was sufficient " to create liabilities not already existing; " in the *O'Hara* case that the Legislature might " create a legal liability on the part of the State to pay for " services illegally rendered, and that in reference to certain claims " it can legalize such as have been theretofore illegally contracted." If the Legislature attempts to legalize an unconscientious claim, its effort is directed toward making a gift of the moneys of the State, and this it may not do under the Constitution. (State Const. art. 8, § 9; *Lehigh Valley R. R. Co.* v. *State of New York*, 204 N. Y. 471.) There is always, therefore, a constitutional question involved in the legislative recognition of a claim, and to this extent the question of the justice and equity of a claim survives to the courts. It was said by Judge CULLEN in

*Wheeler* v. *State of New York* (190 N. Y. 410): "The question,. therefore, presented is, had the respondent such an equitable claim against the State * * * *as to support the statute.*" It was also said by him that the question was whether the facts presented "a sufficient claim in equity to *authorize recognition* of the claim by the Legislature and *a direction* for its payment." Otherwise, if the Legislature acts constitutionally, yet leaves the facts to be determined by the Court of Claims, it would seem that its decision as to .the justness and equity of a claim should be binding. However this may be, it is clear that the Court of Claims did not, and properly could not, determine this claim, on the facts proven, to be unjust and inequitable. For all these reasons a reversal should follow.

All concur, JOHN M. KELLOGG, P. J., in separate memorandum, in which all concur, except COCHRANE, J., dissenting on the ground that the claimant was negligent.

JOHN M. KELLOGG, P. J. (concurring):

The enabling .act contemplates that the plaintiff shall not recover if the injury was due to his personal fault. He directed the other engineers to assemble the material on the job. His duties required his services elsewhere, and he was to meet them there, the material being selected by them. I do not think he was required to expect that competent engineers would bring rotten ropes for use in descending the precipice, but he had the right to assume that the material brought by them had been properly selected. The ordinary rules applicable to a negligence action are not present here. The plaintiff should be chargeable only with his own fault and not with the fault or neglect of others.

All concur, except COCHRANE, J., dissenting on the ground that the claimant was negligent.

Judgment reversed upon the law and the facts and a new trial granted, with costs to appellant to abide the event. The court disapproves of the sixth and seventh findings of fact.