## Board of Education of Calloway County et al. v. Talbott, Auditor of Public Accounts.

(Decided June 11, 1935.)

GARNETT, Jr., for appellants.

BAILEY P. WOOTTON, Attorney General, and WILLIAM R. ATTKISSON, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

The perplexing question confronting us is the constitutional validity of chapter 12, Act of Extra Session 1934 of the General Assembly, entitled:

> "An Act to appropriate to school teachers in forty-three counties and twelve graded school districts of the Commonwealth the amount due such teachers for services rendered as specified in contracts with the boards of education of the said counties. * * *,"

Section 1 lists 43 counties and 12 graded school districts and appropriates to the teachers of these various county and graded school districts for the specific purpose of paying the teachers in those county and graded school districts "so listed for the part of the wages or salaries due them and now unpaid." It directs the auditor of public accounts to draw his warrant upon the treasurer of the commonwealth in favor of the boards of education of those county and graded school districts, and enjoins upon these boards the duty of distributing "to the various teachers of the respective county and graded school districts, the wages and salaries to which they are shown to be entitled and unpaid for said school year"; 50 per cent. to be paid during the fiscal year ending June 30, 1935, and 50 per cent., during the fiscal year ending June 30, 1936.

The auditor contends that the fund appropriated by the act, as soon as appropriated, became a part of the common school fund, as this term is defined by section 184 of the Constitution, and that section 186 of the Constitution imperatively requires a distribution of the common school fund on the census of pupil children for each year. It is also his insistence that the act does not come within the purview of the Governor's call of the Extra Session of 1934 (Acts 1934, Ex. Sess., p. VII).

The Board of Education of Calloway county insists that the sums listed in the act "are not an appropriation of the common school fund and thus required to be distributed per capita, but is the payment of a bonus in recognition of a moral obligation to pay for public service performed." And that, in this view, the act is constitutional. Likewise, it insists that the act is within the Governor's call of the Extra Session.

To appropriately consider the questions thus presented, it is essential to review and interpret the present, and the antecedent, act and statutes in pari materia with the provisions of the Constitution relative thereto.

A casual reading of the title of the act discloses that its intent and purpose is to appropriate to school teachers of the designated county and graded school districts the amount due them for services rendered, as specified in contracts with the boards of education. The context thereof discloses more specifically its intent and purpose is to appropriate out of the general fund "for the part of the wages or salaries due" them "to which they are shown to be entitled and unpaid for said School Year" in the county and graded school districts listed in the act.

It is apparent that the title of the act, as well as the body, denies to the teachers in all other county and graded districts of the commonwealth the benefit of the appropriation. Also, that the services of the teachers in those county and graded school districts were rendered under contracts with the boards of education, and that the fund is appropriated to pay "wages and salaries to which they are shown to be entitled and unpaid for said School Year."

Section 171 of the Constitution, in part, reads:

"Taxes shall be levied and collected for public purposes only and shall be uniform upon all property of the same class subject to taxation within the territorial limits of the authority levying the tax; and all taxes shall be levied and collected by general laws."

Section 183 declares it the duty of the General Assembly, by appropriate legislation, to provide for an efficient system of common schools throughout the state.

Section 184 stipulates for the issuance of bonds of the commonwealth in favor of the boards of education for the sum therein designated, together with certain stock in the bank of Kentucky, shall be held by the board of education inviolate for the purpose of maintaining a system of public schools. The interest and dividends, "together with any sum which may be produced by taxation or otherwise for purposes of common school education, shall be appropriated to the common schools, and to no other purpose."

Section 185 enjoins upon the General Assembly the duty to make provision by law "for the payment of the interest of said school fund, and may provide for the sale of the stock in the Bank of Kentucky; and in case of a sale of all or any part of said stock the proceeds of sale shall be invested by the sinking fund commissioners in other good interest-bearing stocks or bonds which shall be subject to sale and reinvestment, from time to time, in like manner, and with the same restrictions."

Section 186 provides "each county in the Commonwealth shall be entitled to its proportion of the school fund on its census of pupil children for each school year."

Section 187 deprives the General Assembly of making a distinction in the distribution of the school fund on account of race or color, and requires the maintenance of separate schools for white and colored children.

Section 3 of the Bill of Rights is in this language:

"All men, when they form a social compact, are equal; and no grant of exclusive, separate public emoluments or privileges shall be made to any man or set of men, except in consideration of public services."

Section 4426-1, Kentucky Statutes, provides that every county outside of independent graded school districts, or city school districts, containing a city of the first, second, third, or fourth class, shall constitute one county school district, which shall be divided into subdistricts, subject to the power of the county board of education to change the boundaries of the latter, or to establish new, or to unite subdistricts or parts of subdistricts.

Section 4399a-8 prescribes the duty of the county tax commissioner of each county "to show on his books each assessment of the property subject to taxation for county and common school purposes. And after the same shall have been received by the county clerk and receipted for by the county board of education, it becomes the duty of the county board of education each year to prepare, as therein provided, an itemized and detailed budged needed for the supplementing of teachers' salaries during the succeeding school year, and also the estimated total amount that will be received by the state and the amount that will be needed to be raised

by local taxation, including the rate of levy necessary to raise such amounts which shall constitute the budget of the county boards of education, and when submitted to the fiscal court of the county, it becomes its duty to make an annual levy, levying therefor in accordance therewith.''

Section 4445 provides that the contract between the division board of education and the teacher shall expressly provide that its terms are subject to all the provisions of the common school laws.

Sections 4502-1, 4502-2 prescribes the qualifications of teachers of common schools.

Section 4502-3 defines the kinds of certificates the teachers of common schools shall possess.

Section 4399-46 fixes the minimum salary of such teachers at not less than $75 per month; provided that the revenue received by any district from all the state per capita plus one-half of the revenues received from local taxation shall produce a sufficient revenue to pay a minimum salary of $75 per month for a period of several months for elementary teachers and a period of eight months for high school teachers, allowing 15 per cent. for each census pupil in the district.

The General Assembly, at its 1930 Session, passed an act appropriating annually out of the general fund of the state $1,250,000 to be expended and administered under the direction and supervision of the state board of education. Chapter 36, Acts 1930. This appropriation was therein designated as the fund ''for the raising the level of expenditures per pupil for educational purposes in school districts where the level of educational opportunities are below the level and standard fixed and prescribed by law and the state board of education.'' The local boards of education which had levied the maximum school tax permitted by law, and caused its budget and salary schedule to be approved by the state board of education, were privileged to apply for aid from the fund thereby appropriated. Accordingly, the chairman of the state board made a requisition upon the auditor of public accounts for the amount allotted to these county and graded school districts. The auditor of public accounts declined to issue a warrant upon the treasurer for the sums requested. The state board of education thereupon brought an action in the Frank-

lin circuit court, in which a mandatory injunction was sought to require him to draw a warrant upon the state treasurer for a stated sum. The auditor of public accounts defended. From an adverse judgment, he appealed to this court. It was our conclusion that the act was in violation of the provision of our Constitution requiring a pro rata distribution of the school fund on a per capita basis among the counties. It was also our conclusion that the money when appropriated for school purposes under the 1930 act, immediately became a part of the school fund, distributable as provided by the Constitution, though appropriated out of the general fund. See Talbott, Auditor of Public Accounts, v. State Board of Education et al., 244 Ky. 826, 52 S. W. (2d) 727.

The boards of education of the county and graded school districts listed in the act here involved, in anticipation of the county and graded school districts receiving their respective allotment under the act of 1930, entered into contracts with the teachers of those county and graded school districts fixing the salaries of the latter for the school year to include the teachers' portion of the allotment. These teachers performed the services called for by their respective contracts, and because the act of 1930 was declared unconstitutional, they were not paid that portion of the salary due from the fund allotted to the county or the school district under the act of 1930.

The 1934 act in effect serves the purpose of the constitutionally invalid act of 1930. The latter appropriated a portion of the general fund to equalize the teachers' salaries in common schools of the county and graded school districts in the counties and the districts listed in the Act of 1934, in advance of the performance of the services; whereas the intendment of the latter is to accomplish the same purpose after the performance of the same services by the same teachers. All teachers of the common schools of the commonwealth are state employees, and in discharging their duties, they render services for the state, for a public purpose. Board of Trustees of Fairview Graded Common School District et al. v. Renfroe et al., 259 Ky. 644, — S. W. (2d) —, decided May 28, 1935. As state employees, they are entitled to the wages or salaries which are provided for by enactments which the Legislature may, in accordance with the provisions of the

Constitution, appropriate and distribute on a per capita basis to all teachers of the common schools of the commonwealth.

The appropriations provided for by the 1930 and the 1934 acts were to provide wages and salaries of teachers to the extent of that portion of the appropriation, allotted as directed therein to their respective county and school districts, above or in addition to that tax levied, collected and distributed by the commonwealth under the general law for common school purposes to them and all other teachers of the common schools. Therefore, when the 1930 act was declared by the court to be invalid because it was not within the power of the Legislature to appropriate and so distribute the school fund, or in any manner other than that expressly authorized and directed by the Constitution, the intended beneficiaries of the act of 1930, were not thus deprived of wages or salaries they were entitled to under the Constitution. The act of 1934 contrived a method to pay to teachers of the county and school districts listed in the 1934 act, a bonus, or a gratuity, to equalize their wages or salaries with those of the teachers of the wealthier county and graded school districts of the commonwealth.

The act of 1930 is in reality no more nor less than another method of providing the same bonus to the same teachers.

The courts seem to be agreed that if an appropriation is made, or a tax imposed, to pay even a bounty earned, or a claim not binding in law, but just and equitable in character, and involving a moral obligation, and the Legislature making the appropriation does so within its constitutional authority, but it is not paid in accordance with the act authorizing its payment when the act is later declared unconstitutional, knowledge of its constitutional invalidity will not be imputed in the advance of a court decision to that effect, to those acting under its provision so as to preclude them from having a moral claim based on their reliance on the appropriation for the payment of which the Legislature may subsequently make an appropriation and direct its payment.

The Legislature may make an appropriation in recognition of moral or equitable obligations, such as a just man would be likely to recognize in his own affairs, whether by law he is required to do so or not. "Taxa-

tion to raise money to pay a claim based on a moral obligation, and not enforceable at law, is for a public purpose, and is proper unless forbidden by some constitutional provisions." Cooley on Taxation, vol. 1 (4th Ed.) sec. 194, page 412. "Debts," within the meaning of our Constitution, include "those debts or claims which rest upon a merely equitable or honorary obligation, and which would not be recoverable in a court of law if existing against an individual," but which would be binding upon his conscience or honor. United States v Realty Co., 163 U. S. 427, 16 S. Ct. 1120, 1125, 41 L. Ed. 215. "The term 'moral obligation' has been defined as 'a duty which would be enforceable at law were it not for some positive rule which exempts the party in that particular instance from legal liability.' It has also been defined as one 'which cannot be enforced by action but which is binding on the party who incurs it in conscience and according to natural justice.' A 'moral obligation' means that some direct benefit was received by the state as a state or some direct injury has been suffered by the claimant under circumstances where in fairness the state might be asked to respond, and there must be something more than a mere gratuity involved." See Cooley on Taxation, vol. 1 (4th Ed.) supra.

It is true that we have construed sections 3 and 171 of our Constitution "to mean that an appropriation may be made by way of gratuity in recognition of public services." As an example of public purpose, as the term is used in these sections, see Norman v. Ky. Board of Managers of World's Columbian Exposition, 93 Ky. 537, 20 S. W. 901, 14 Ky. Law Rep. 529, 18 L. R. A. 556; Hager v. Ky. Children's Home, 119 Ky. 235, 83 S. W. 605, 26 Ky. Law Rep. 1133, 67 L. R. A. 815; Kentucky Live Stock Ass'n v. Hager, 120 Ky. 125, 85 S. W. 738, 27 Ky. Law Rep. 518, 9 Ann. Cas. 50. As illustrative of the term "public service," or "moral obligation," see our definition in Ferguson, etc., v. Landrum, etc., 64 Ky. (1 Bush) 548, and Bosworth v. Harp, 154 Ky. 559, 157 S. W. 1084, 45 L. R. A. (N. S.) 682, Ann. Cas. 1915C, 277. See Judson on Taxation, sec. 349.

An example is where a public officer has been subject to a responsibility and loss in an honest attempt to perform public duty. The Legislature may provide for his compensation or indemnity by the state or other political division for which he was acting. Board of

Com'rs of Linn County v. Snyder, 45 Kan. 636, 26 P. 21, 23. Am. St. Rep. 742; United States v. Realty Co., supra; Felix v. Board of Com'rs of Wallace County, 62 Kan. 832, 62 P. 667, 84 Am. St. Rep. 424. For the same principle, see Louisville & N. R. R. Co. v. Trustees of School District No. 108, 29 S. W. 340, 16 Ky. Law Rep. 554. In determining whether the Legislature may make an appropriation, or direct a tax to be levied, to pay a moral claim, the question arises in every case as to whether the particular claim is a moral one for which the state or other political division may appropriate the money or levy the tax.

The act of 1934 is a legislative declaration that the court's decision in holding the act of 1930 invalid, because the Legislature had no constitutional power to distribute the school fund, when paying teachers' salaries, except on a per capita basis, was erroneous. It in effect declares the 1930 act good and valid, and manifestly regards omissions or irregularities in its passage as the basis of the court's conclusion. The 1930 act was not declared invalid because of legislative omissions or irregularities, but solely because the Legislature was expressly prohibited by the Constitution from so appropriating and distributing the common school fund as therein authorized and directed.

"The general and established proposition is that what the Legislature could have authorized, it can ratify if it can authorize at the time of ratification." Charlotte Harbor & N. Ry. Co. v. Welles, 260 U. S. 8, 43 S. Ct. 3, 4, 67 L. Ed. 100; United States v. Heinszen & Co., 206 U. S. 370, 27 S. Ct. 742, 51 L. Ed. 1098, 11 Ann. Cas. 688; Phillip Wagner, Inc., v. Leser (Wagner v. Baltimore), 239 U. S. 207, 36 S. Ct. 66, 60 L. Ed. 230; Stockdale v. Insurance Companies, 20 Wall. 323, 22 L. Ed. 348; Burney v. Board of Com'rs of Bladen County, 184 N. C. 274, 277, 114 S. E. 298; Dover Drainage Dist. v. Pancoast, 102 Fla. 267, 135 So. 518; State v. Bradford et al., 121 Tex. 515, 50 S. W. (2d) 1065; Weber v. City of Helena, 89 Mont. 109, 297 P. 455.

Its power to validate by a curative act is limited to the case of omissions or irregular exercise of power, whether its exercise is to provide an appropriation or be another measure. If it is without constitutional power, it cannot by a subsequent act cure the want of power to act in the first instance. People v. C., M. &

St. P. Ry. Co., 321 Ill. 499, 152 N. E. 560; People v. Ill. Cent. R. Co., 310 Ill. 212, 141 N. E. 822; People ex rel. Endicott, County Collector, v. Prather et al., 343 Ill. 443, 175 N. E. 658, 74 A. L. R. 874. Nor can it by a later act validate one that it is forbidden by the Constitution to enact. 2d Lewis Statutory Construction, page 1229; Cooley on Constitutional Limitations, page 531; Hunt County v. Rains County (Tex. Civ. App.) 7 S. W. (2d) 648; Hutcheson v. Storrie, 92 Tex. 685, 51 S. W. 848, 45 L. R. A. 289, 71 Am. St. Rep. 884.

It may make an appropriation for whatever purposes taxes may be laid, which is not expressly or by clear implication prohibited by the Constitution, and when so prohibited, the Legislature cannot circumvent it by a curative act. If an appropriation is made in violation of the Constitution, and a debt or obligation is incurred in reliance thereon, as in this case, such cannot be a public purpose as the term is used in sections 3 and 171, for the payment of which, a provision by a curative act, may be made. An example, is, a tax cannot be levied to pay a debt incurred in excess of the constitutional debt or salary limit, at least so far as the excess is concerned. For a statement of the principle, see Cooley on Taxation, vol. 1 (4th Ed.) sec. 199, page 423; Crowley v. F. R. Fulton & Co., 112 La. 234, 36 So. 334; Sun Vapor Elec. Light Co. v. Keenan, 88 Tex. 197, 30 S. W. 868; Ewing v. Com'rs Court of Dallas County, 83 Tex. 663, 19 S. W. 280; Baltimore & O. S. W. R. Co. v. People ex rel., 200 Ill. 541, 66 N..E. 148; Miller v. Dunn, 2 Cal. Unrep. Cas. 673, 11 P. 604; Babcock v. State of N. Y., 190 App. Div. 147, 180 N. Y. S. 3; Nougues v. Douglass, 7 Cal. 65; Miller County Highway & Bridge Dist. et al. v. Cook, 134 Ark. 328, 204 S. W. 420; Sechrist v. Board of Com'rs, 181 N. C. 511, 107 S. E. 503; Starmount Co. v. Town of Hamilton Lakes, 205 N. C. 514, 171 S. E. 909; Chicago, R. I. & P. R. Co. v. Streepy et al., 211 Iowa, 1334, 236 N. W. 24; L. E. Whitham & Co. v. Hendrick (Tex. Civ. App.) 1 S. W. (2d) 907.

In Babcock v. State of N. Y., 190 App. Div. 147, 180 N. Y. S. 3, 11, the court said:

"If the Legislature attempts to legalize an unconstitutional claim, its effort is directed toward making a gift of the moneys of the state; and this it may not do under the Constitution. Section 9, art.

8, State Constitution; Lehigh Valley R. Co. v. Canal Board, 204 N. Y. 471, 97 N. E. 964, Ann. Cas. 1913C, 1228. There is always, therefore, a constitutional question involved in the legislative recognition of a claim, and to this extent the question of the justice and equity of a claim survives to the courts. It was said by Judge Cullen in Wheeler v. State, 190 N. Y. [406] 410, 83 N. E. [54] 55, 123 Am. St. Rep. 555: 'The question, therefore, presented is: Had the respondent such an equitable claim against the state * * * as to support the statute?' "

The Legislature had no power to make the appropriation equalizing the school funds of the county and school districts listed in the act of 1934; a fortiori, it had no power to appropriate this fund to pay a moral or other debt arising from an obligation thereunder. The power of taxation for the purposes contemplated by the Constitution and the privilege of making an appropriation to be distributed as therein provided is unlimited in the Legislature, but such power does not exist for a purpose not sanctioned by that instrument, or expressly prohibited. The restriction upon the power of the Legislature, as found in it when appropriating a fund for the maintenance of the common school system, would be nugatory, if the same end could be accomplished by other modes, such as the acts of 1930, 1934. The evil intended to be prevented by the Constitution would still exist, and the injury to the people would be the same. The power to make the appropriation of 1930, being denied by the Constitution, the power to make that of 1934, for the same reasons, must also be considered thereby denied. The appropriation provided by the act of 1930, and that of 1934, the latter being merely curative, stand on the same premise and must fall together. The principles which guide us to this conclusion are not inconsistent, but coordinate, with those enunciated in Bosworth v. Harp, supra; Kenton & Campbell Benev. Burial Ass'n v. Quinn, 244 Ky. 260, 50 S. W. (2d) 554; Stevenson v. Hardin, 238 Ky. 600, 38 S. W. (2d) 462; Shaw v. Fox, 246 Ky. 342, 55 S. W. (2d) 11; Campbell v. Commonwealth, 229 Ky. 264, 17 S. W. (2d) 227, 63 A. L. R. 932; Craig v. O'Rear, 199 Ky. 553, 251 S. W. 828; Carman v. Hickman County, 185 Ky. 630, 215 S. W. 408; State Board of Char. and Cor. v. Hays, 190 Ky. 147, 227 S.

W. 282; Caudill v. Pinsion, 233 Ky. 12, 24 S. W. (2d) 938; United States v. Realty Co., supra, and other cases cited and relied upon in the brief of the board of education.

With the views we have expressed, it is entirely unnecessary to determine whether the act in question was within the purview of the Governor's call of the Extra Session of 1934.

As worthy as we may believe to be the claims of the teachers who would receive the benefit of the appropriation provided for by the act of 1934, and however willing we may be to invoke for them the benedictions of the good goddess, our obligation to the Constitution impel us to affirm the judgment.

The whole court sitting.

Ratliff, J., dissenting.