## Caudill v. Pinsion, Mayor, et al.

(Before Judge Thomas of the Court of Appeals, February 28, 1930.)

Before Judge THOMAS of the Court of Appeals.

STEPHENSON & STRATTON for appellant.

J. P. HOBSON, JR., for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS—
Sustaining motion for temporary injunction.

Plaintiff, J. D. Caudill, as a citizen and resident of the city of Pikeville and a taxpayer therein, filed this action on behalf of himself and other taxpayers against George Pinsion, Jr., mayor of the city, and others of its officers possessing related duties, and E. E. Trivette, seeking to enjoin the council, and the officers having duties to perform with reference thereto, from paying physicians', hospital, and nursing bills of Trivette out of the public funds of the city, amounting in the aggregate to $1,296, upon the ground that the ordinance or resolution of the city council directing its payment was unauthorized, and that the payment of the amount or any part thereof would constitute a devotion of public funds raised by taxation to purposes prohibited by section 171 of our Constitution, which in part says: ''Taxes shall be levied and collected for public purposes only.'' The claimants of the various items making up the contested amount were later made parties.

The clerk, upon filing of the petition granted an ex parte restraining order which was later dissolved by the judge of the Pike circuit court on motion duly made for that purpose, and at the same time the judge also overruled plaintiff's motion for a temporary injunction. The case is before me, as a member of the Court of Appeals, pursuant to a motion made by plaintiff under the provisions of section 297 of the Civil Code of Practice as amended by act of March, 1918, chapter 163, page 669 of the session acts of that year and which amendment granted to a member of this court authority to issue temporary injunctions when refused by the judge of the circuit court.

The facts are these: A policeman of the city was given a search warrant to execute. He summoned Trivette, who was at the time a commissioner of the United States District Court, to assist him in its execution. In an effort to carry out the mandate of the warrant, Bruce Little, whose premises were to be searched, was killed, as was Robinsion, the policeman, and Trivette was severely wounded, as a consequence of which the bills in contest were incurred by him. The council later passed an ordinance directing its treasurer to pay Trivette's expense bills so incurred, followed by this action to enjoin the payment thereof upon the grounds stated.

On this hearing, complaint is made by counsel for defendants on the sufficiency of the notice by plaintiff that he intended to make the motion before the undersigned, but which it is concluded is entirely without merit, and especially so since a brief has been filed in behalf of his clients. It is next insisted that plaintiff, as a taxpayer, cannot maintain this action without showing an application by him to the mayor and a request by that officer to contest the payment, with a refusal, and cases from this court are cited in support of that contention; but the law is unanimous to the effect that such a previous application is not required when the person or persons to whom it should be made, and who are primarily required to do so, are the ones committing the acts sought to be prevented by the injunctive relief. Shipp v. Rodes, 196 Ky. 523, 245 S. W. 157, and cases therein cited. That being true, no such precedent application was required in this case.

On the merits it is argued by counsel for defendants in opposition to the motion that since the enactment of March 22, 1926, amending section 4881 of our Statutes, municipal corporations are included in the word "employer" within the meaning of our Workmen's Compensation Statute, and in some way it is attempted to be argued therefrom that a liability was thereafter imposed upon municipal corporations where it did not previously exist. But the writer and all other members of the court are unable to draw any such inference, or to conclude that the city of Pikeville, who had not accepted the provisions of the statute, thereby became liable to pay the items in contest, since, notwithstanding such failure on its part, there must first be a legal liability against a defendant employer before an action at law may be main-

tained against him or it, either upon the alleged cause of action against it or upon any alleged compromise thereof, and, if there was no such liability against the city of Pikeville in this case, the fact that it did or did not accept the provisions of the Compensation Statute could have no effect one way or the other.

So the question is: Whether there was or is any legal liability of a municipality to one of its police officers, or one legally assisting him, when such officer or assistant is assaulted, killed, or injured in the discharge of his official duty? It is not shown in this case whether the search warrant was issued as a process in enforcing a city ordinance, or whether it was issued in an effort to enforce a state statute. If the latter, there would be not even remote grounds to conclude that the city would be liable for the consequences. But it is equally true if the officers were engaged at the time in an effort to enforce some ordinance theretofore enacted by the city council, since in that case the city would be discharging a governmental function, and the officers would be engaged in it, and, if they were injured or killed while so engaged, the city would by no means be liable to them or their estate. 43 C. J. 925, sec. 1702; 906, sec. 1739; 964, sec. 1745. In the last referred to page and section the text says: ''The police regulations of a city are not made and enforced in the interest of the city in its corporate capacity but in the interest of the public. A city is not liable, therefore, for the acts of its officials in attempting to enforce such regulations, even when the regulations are void . . . Furthermore, police officers can in no sense be regarded as servants or agents of the city. Their duties are of a public nature. Their appointment is devolved upon cities and towns by the legislature as a convenient mode of exercising a function of government.'' See Hershberg v. City of Barbourville, 142 Ky. 60, 133 S. W. 985, 34 L. R. A. (N. S.) 141, Ann. Cas. 1912D, 189.

The text in volume 20, American and English Encyclopedia of Law (2d Ed.) p. 1193, states the general and universal rule exempting municipal corporations from liability for alleged tortious injuries to the persons or property of individuals when the municipality or its officers are engaged in the performance of public or governmental functions or duties. On the next page (1194) it is broadly stated that: ''Nor is liability incurred by a city in the exercise of its police power in measures

adopted for the general health, comfort, and convenience of the public, or providing for the care of the poor," and on the following page (1195) it is pointed out that the rule of exemption from liability applies to the refusal or failure of the municipality to enforce the laws under its authority to do so, since whether or not it will exercise such authority is itself a public governmental function; "the municipality not being liable for the acts of its officers in the furtherance of such object, though they may act negligently, or under void judgments or ordinances." To the same effect is the text in 19 R. C. L. p. 1083, sec. 369, wherein it is said, inter alia: "It is for this reason (the performance of discretionary governmental function) that a municipal corporation can not be civilly liable for enacting or failing to enact or suspending, or enforcing, or failing to enforce ordinances which were within its power to enact or not as it deemed best," etc. See, also, the text in the same volume, pp. 1098, 1099, 1103, 1114, and 1119.

On the cited page 1114 it is distinctly shown in the text that the officers of a municipality are not its agents so as to cast liability on the municipality for the derelictions of such officers under the doctrine of respondeat superior, and the text on the cited page 1119 says: "A municipal corporation can under ordinary conditions incur no liability by reason of the defaults of its police department. The prevention of crime is a purely governmental function, undertaken for the benefit of the public at large, and, if police officers are appointed (or elected) and paid by the various municipalities, this is done merely as a matter of convenient administration. Their duties are ordinarily prescribed by law, and they are public officers and not the servants or agents of the city or town in which they serve. As already stated, a municipality is not civilly liable at common law for the failure of its police officers to enforce the law and to suppress disorder and crime, and it is generally held that it is equally exempt from liability from wrongs and injury inflicted by the policemen themselves," etc.

All recognized authoritative writers upon the subject are in perfect accord with the foregoing texts. There is no dissent therefrom either by text-writers or judicial pronouncements of courts, and it would be useless to incumber this opinion with additional citations. Of course, it is recognized in all of them, and by the opinions of all courts, that, when a municipality is engaged in the performance of functions not strictly or at all gov-

ernmental, a different rule, under varying circumstances, prevails, and it is also recognized that it, perhaps, would be competent for the Legislature to provide for civil liability against such corporations for negligence in the performance of purely governmental functions. But we have no such statute in this state imposing liability upon the city of Pikeville for the alleged matters upon which it is sought to be upheld in this case, and, in the absence of such a statute, there can be no possible ground upon which such alleged liability may be predicated. It is perhaps true that none of the texts, supra, specifically deals with injuries sustained by officers in the enforcement of any law enacted in furtherance of the police power, as was sustained by the defendant Trivette in this case. But such an exemption would inevitably follow from the sweeping language of the exemptions contained in the texts to which reference has been made, since it is therein pointed out that no liability is incurred to any person whomsoever.

Moreover, if not a line had ever been written upon the subject, it is inconceivable how it could be contended that a municipal peace officer could recover damages inflicted upon him in the discharge of his duties in the enforcement of a police regulation. Surely it could not be contended that the law violator who inflicted the injuries sustained any such relationship to the municipality as to render the latter liable for his wanton or malicious acts.

We have applied the doctrine of exemption from liability for acts of a municipality performed in the exercise of a strictly governmental function in numerous cases without exception, Lampton & Burks v. Wood, 199 Ky. 250, 250 S. W. 980; City of Harlan v. Peaveley, 224 Ky. 338, 6 S. W. (2d) 270; Wyatt v. City of Henderson, 222 Ky. 292, 300 S. W. 921; White v. City of Hopkinsville, 222 Ky. 664, 1 S. W. (2d) 1068, and others referred to in those opinions, and the above-inserted text, in a general way, state the rule as we have adopted it. Therefore the city exercises a governmental function as to the number of policemen it will employ (in the absence of charter requirements), and the duties imposed upon them, and such officers are but designated *police* agents to execute the governmental functions entrusted to them. They are not servants of the city so as to create the relationship between it and them of employer and employee, or to demand the application of the legal principles gov-

erning the relation of master and servant. Where there is no legal liability of the city to pay the amount involved a pretended compromise of an asserted and wholly unfounded claim against it by Trivette in this case furnishes no consideration therefor, and renders the alleged compromise agreement invalid and unenforceable.

There being, therefore, no legal liability against the city to pay the involved items, and no foundation or consideration for the alleged compromise with Trivette, the attempted assumption of the payment of the sum involved was and is but a voluntary donation of public funds for other than public purposes, and is an attempt on the part of the city council to devote public funds contrary to the above-quoted provision of section 171 of our Constitution.

But it is argued by counsel for defendants that section 3 of the Constitution, saying: ''No grant of exclusive, separate public emoluments or privileges shall be made to any man or set of men, except in consideration of public services,'' by implication authorized the grant of public emoluments by the city to Trivette, since he, at the time he received his injuries and sustained the damages to his person, was performing public services. If we should concede that the section applied to municipal corporations and not to the Legislature alone, then no such interpretation can be given it. It only means that, before public emoluments shall be bestowed, the bestowee shall have performed public services for which the bestowed emoluments formed the consideration. Illustrated by this case, if Trivette were to make claim against the city for the public services he performed, it, perhaps, would be authorized to pay him a reasonable sum or amount therefor; but it was never intended to cover personal injuries sustained while performing the public services.

The whole court considered this motion with me, and it was the unanimous conclusion that the motion should be sustained and the temporary injunction granted; which the clerk of the circuit court or the judge thereof will do upon the execution of an injunction bond by plaintiff as prescribed by the Code to the effect that plaintiff will pay defendant all damages, if it should be finally determined that the injunction was wrongfully issued.