**CITY OF LEXINGTON, Appellant,**

v.

**Albert YANK, Appellee.**

Court of Appeals of Kentucky.

June 21, 1968.

Rehearing Denied Oct. 18, 1968.

William C. Jacobs, Lexington, for appellant.

Strother Kiser, Lexington, for appellee.

DAVIS, Commissioner.

Albert Yank obtained a jury verdict and a judgment against the City of Lexington for $35,000 based on his claim for personal injuries received and medical expenses incurred when Yank was assaulted by a police officer of Lexington. On this appeal the bases presented for reversal are (1) that a directed verdict should have been given for the appellant; (2) the verdict is excessive and not supported by competent evidence; and (3) errors in instructions.

The evidence for appellee tended to show that Robert Wagoner, then a police officer of the City of Lexington, stopped on a Lexington street an automobile in which appellee was a passenger and which was driven by a Miss Lilly. The officer charged that Miss Lilly had failed to observe a traffic light; appellee testified that he inquired of the officer where the traffic light was located and suggested that the officer should give Miss Lilly a citation and permit them to proceed on their journey. Officer Wagoner was incensed by the comments of appellee and struck him on the arm and about the face and head. One of the blows, said to have been administered with a blackjack, injured Yank's right eye. Yank was handcuffed and literally "thrown" into the "paddy wagon" and hauled to police headquarters. According to appellee's evidence, Yank received further beating at the hands of Wagoner and other officers as he was removed from the wagon and again as he was being transported on the elevator to the booking desk. It is appropriate to observe that Wagoner was dismissed from the Lexington police force and had absented himself by trial time so that he did not appear as a witness. Lexington's Assistant Chief of Police, William B. Davis, candidly testified that excessive force had been used in the arrest of appellee. The charges filed against appellee by Officer Wagoner were dismissed by the Lexington police court.

Appellant urges us to reconsider the position taken in Haney v. City of Lexington, Ky., 386 S.W.2d 738, 10 A.L.R.3d 1362, wherein we abrogated the former rule of sovereign immunity for a municipal corporation. In support of the argument, appellant maintains that decisions subsequent to Haney, such as Cullinan v. Jefferson County, Ky., 418 S.W.2d 407; Moores v. Fayette County, Ky., 418 S.W.2d 412; and

Wood v. Board of Education of Danville, Ky., 412 S.W.2d 877, in which the governmental units there involved were held still immune from tort liability, are so inconsistent with the rationale of Haney as to impel complete retreat from the rule proclaimed by Haney. The court is not persuaded to overrule Haney.

In City of Louisville v. Louisville Seed Co., Ky., (decided March 8, 1968), the court carefully reconsidered the Haney decision and spelled out certain limitations upon its applicability. A pertinent portion of the opinion in City of Louisville v. Louisville Seed Co., supra, aptly summarizes the basis for that decision:

"Where the act affects all members of the general public alike, it would be unreasonable to apply to it the broad principles of tort liability for the reasons previously stated in this opinion. But, when the city, by its dealings or activities, seeks out or separates the individual from the general public and deals with him on an individual basis, as any other person might do, it then should be subjected to the same rules of tort liability as are generally applied between individuals. This, likewise, is true when the negligent act of the city per chance falls upon the isolated citizen as distinguished from the general public. When that act does not involve the ultimate function of government, the city should be required to respond in damages. This is true without regard to whether the function would have been classified as proprietary or governmental under our old classifications."

In the case before us the basis for immunity, as delineated in the just quoted portion of the Louisville Seed Company decision, is not present. Within the purview of the latter opinion, the city, through its officer, substantially separated Yank from the general public and dealt with him on an individual basis just as a private person might have done. In such a circumstance the tort liability of the city is gauged by the rules generally applicable between individuals.

Appellant insists that even if we apply the Haney rule of nonimmunity we must absolve the city, because no true agency relationship exists between a city and a police officer of the city. Appellant points out that the statutes of the Commonwealth mandatorily prescribe the qualifications and tenure for municipal police officers for cities of Lexington's class. Moreover, the statutes fix the procedures for and limits of disciplinary measures as well as the permissible working hours. The Constitution of Kentucky, Section 228, as implemented by KRS 95.490, dictates the oath and bond for the officer; and his duties and powers are defined in Section 10 of the Kentucky Constitution, as well as in statutory enactments, the Rules of Criminal Procedure, and various case law announced by this court. Reliance is had upon Taylor v. City of Owensboro, 98 Ky. 271, 32 S.W. 948, in which it was held that the city was not liable for the act of a police officer in making an arrest for breach of the peace under a void ordinance of the city. In the course of that opinion, it was said that a municipal corporation is not responsible for acts of police officers unless it is shown that the officer was truly the local officer of the city respecting some exercise of municipal power for the peculiar benefit of the city in its local or special interests, as distinguished from a power and duty imposed by the state for the general benefit of the public at large.

We need not quibble as to whether the enunciations made in Taylor v. City of Owensboro, supra, were necessary to the decision or *obiter dicta*. Since sovereign immunity for municipal corporations existed when the decision was reached in the Taylor case, the decision could have been reached on that ground alone. We think it is clear, however, that the decisions in Haney v. City of Lexington, supra, and City of Louisville v. Louisville Seed Co., supra, have established the prop-

osition that principal-agent and master-servant relationships within the scope of the *respondeat superior* doctrine do exist between a municipal corporation and its officers and employees. The basis for the opinion in Caudill v. Pinsion, 233 Ky. 12, 24 S.W.2d 938, is not readily discernible. In the course of the opinion it was said that officers of a municipality are not agents of the municipality when they are engaged in performance of public or governmental functions. A municipal corporation must act through human agency, and the policy of removing sovereign immunity would stand mocked by adherence to the rule urged by appellant and proclaimed in Taylor v. City of Owensboro, supra, and Caudill v. Pinsion, supra.

Appellant contends that the rationale of the line of cases of which Commonwealth, for Use and Benefit of Coombs v. Vincent, 282 Ky. 95, 137 S.W.2d 1091, is typical should rule the present case. If liability were being asserted against Officer Wagoner's superior officer, those decisions might be apposite here. Since the liability is placed upon the employing entity—not the supervisory or chief officer—we regard the case at bar as clearly distinguishable from Commonwealth, for Use and Benefit of Coombs v. Vincent, supra, and the line of cases in which it lies.

▮ Appellant's second attack upon the judgment is premised upon the assertion that the verdict is excessive, since there was no competent proof that any of the injuries sustained by appellee permanently impaired his ability to earn money and since no claim for punitive damages was made. Medical proof presented for appellee was to the effect that he had sustained permanent injury resulting in 50% disability. Some disfigurement of his features was disclosed in the evidence. We quote a pertinent portion of the testimony of one doctor who gave evidence for appellee:

"A. Asymmetry. I mean one side is a little bit different from the other. The one eye is a little bit—one eye doesn't track with the other just right either. It looks like to me it is a little bit asymmetrical.

He also has a dent in the back of his head where he got hit that you can still feel right up the occipital area here. What else can I tell you? What else do you want to ask me?

Q. Then it is your professional judgment that there is permanent injury, and I don't know if I asked you this or not: Does it necessarily follow that there will be a certain amount of pain in the future in connection with his injuries?

A. Yes, I believe that he has permanent damage and that there will be a certain amount of pain.

Q. Throughout the future?

A. In the future, yes, from the head injury and from the neck injury, too, and I believe that his memory and his concentration won't be as good as they were ordinarily; his vision won't be as good as it was."

There was much other evidence detailing the pain endured by Yank and the likelihood of its continuing to affect him for the rest of his life. At the time of his injury, the appellee was about 45 years of age and in good health. His average earnings had exceeded $20,000 per year. He testified that it was necessary for him to dispose of some of his business endeavors because his physical impairments prevented his proper attention to them. Yank's own testimony of his subjective symptoms was credible and consistent with the medical evaluations of his condition. In these circumstances we are not persuaded that the verdict was excessive. See Townsend v. Stamper, Ky., 398 S.W.2d 45, 12 A.L.R.3d 108, and cases referred to in those authorities.

▮ Appellant next urges that the court erred in failing to instruct the jury that it could limit damages to those injuries sustained as the result of an assault which

was made within the scope of the officer's employment and exclude recovery for any injury it believed occurred for any assault outside the scope of his employment. The basis for this argument is found in the testimony of other police officers who related that it was against police regulations for Wagoner to accompany Yank from the scene of the arrest. Hence, it is reasoned that any injuries allegedly inflicted by Wagoner after leaving the scene of arrest were clearly beyond the scope of his employment. There is no merit in this contention, because the court did instruct the jury to absolve appellant if it believed from the evidence that any injury inflicted by Wagoner occurred while Wagoner had stepped aside from his employment to accomplish some private purpose of his own. What we have said about the doctrine of *respondeat superior* earlier in this opinion disposes of any other claim of error by appellant in this regard.

█ The final assault upon the judgment relates to Instructions 1 and 2 given by the court in which the jury was advised that it could not fix liability upon the appellant if it believed that Wagoner was not acting in the real or apparent scope of the business of the City of Lexington when the injuries occurred. The trial court defined "real or apparent scope of the defendant's business" as meaning that Wagoner must have been acting in furtherance of the business for which he was employed before appellant could be held liable. Appellant points to Wood v. Southeastern Greyhound Lines, 302 Ky. 110, 194 S.W.2d 81, but that case is obviously distinguishable from his one because of vital factual differences. There, a bus driver was found to have been motivated by conception of personal wrong and invasion of his own private life. The court held that an assault committed by him on this account was not within the scope of his employment. The situation at bar is by no means comparable.

The judgment is affirmed.

WILLIAMS, C. J., and HILL, MILLIKEN, OSBORNE, PALMORE and STEINFELD, JJ., concur.

MONTGOMERY, J., dissents on the ground that the rationale of Commonwealth, for Use and Benefit of Coombs v. Vincent, 282 Ky. 95, 137 S.W.2d 1091, should control.