**LOUISVILLE/JEFFERSON COUNTY METRO GOVERNMENT, Appellant**

v.

**Betty BRADEN, Individually and as Administratrix of the Estate of Don W. Braden; John W. Lewis; and Hartford Accident & Indemnity Company, Appellees**

**NO. 2015–CA–001238–MR**

Court of Appeals of Kentucky.

JANUARY 27, 2017; 10:00 A.M.

388

BRIEF FOR APPELLANT: Edward H. Bartenstein, Patricia C. Le Meur, Louisville, Kentucky

ORAL ARGUMENT FOR APPELLANT: William B. Oberson, Louisville, Kentucky

BRIEF FOR APPELLEE, BETTY BRADEN, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF DON W. BRADEN: Jamie K. Neal, Kevin C. Burke, Louisville, Kentucky

BRIEF FOR APPELLEE, JOHN W. LEWIS, Alison Messex, Don Meade, Louisville, Kentucky

ORAL ARGUMENT FOR APPELLEE, BETTY BRADEN, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF DON W. BRADEN: Kevin C. Burke, Louisville, Kentucky

ORAL ARGUMENT FOR APPELLEE, JOHN W. LEWIS: Don Meade, Louisville, Kentucky

BEFORE: CLAYTON, COMBS, AND MAZE, JUDGES.

## OPINION

MAZE, JUDGE:

Louisville/Jefferson County Metro Government (hereinafter "Louisville Metro") appeals from an order of the Jefferson Circuit Court denying Louisville Metro's motion for declaratory judgment and granting declaratory judgment in favor of Appellees, John Lewis and the Estate of Don W. Braden (hereinafter "the Estate").

We hold that the trial court's exclusive reliance upon Lewis's compliance with Louisville Metro Police Department (LMPD) Standard Operating Procedures

(SOPs) was misplaced. We further hold that, at the time of the accident, Lewis was not operating within the scope of his employment for purposes of triggering Louisville Metro's statutory obligation to defend and indemnify him under CALGA. Therefore, we vacate the trial court's order granting summary judgment in favor of the Estate; and we remand to the trial court for entry of an order granting summary judgment in favor of Louisville Metro.

## Background

In 2011, John Lewis was an officer with LMPD. Beginning at or around that time, Lewis's departmental vehicle, an unmarked van, also served as his take-home vehicle. LMPD owned this vehicle but permitted Lewis to use it for official and personal tasks pursuant to a voluntary departmental program. As a condition of this privilege, Lewis signed a personal use agreement which read, in part,

> I understand that if I am assigned a Louisville–Jefferson County Metro Government Vehicle (either owned or leased) authorized for Personal Use that I agree that in consideration for being provided this vehicle, that the Metro will provide Liability protection to me free of charge for up to $100,000 per Accident for any damages for Bodily Injury or Property Damage caused by my negligent operation of the assigned Metro vehicle while on Personal Use, unless and until my employment with the Metro is terminated or Metro employees are otherwise notified.

The Fraternal Order of Police negotiated this liability coverage under the applicable Collective Bargaining Agreement (CBA). The relevant provision of this CBA stated that as long as Louisville Metro provided "liability protection for up to $100,000 per accident while on personal use," Louisville Metro would not have to reimburse the member-officer for liability insurance incurred for use of the same vehicle. In the personal use agreement, Lewis also stated that he understood that he "will may be responsible for any claim which exceeds $100,000" and that he could obtain supplemental, private insurance.[1] Lewis did not do so.

On June 17, 2011, Lewis departed work at LMPD, collected his children from school and visited a drug store before heading home. On his way home, Lewis's vehicle crossed the center line of Smyrna Road in Jefferson County and struck Betty Braden's vehicle in which her husband, Don, was a passenger. Don Braden died as a result of this accident. Betty Braden brought claims against Lewis in her individual capacity and as Administratrix of her husband's estate. Louisville Metro intervened to provide a defense for Lewis. However, Louisville Metro also filed a motion for declaratory judgment on the question of its liability for Lewis's liability beyond $100,000 pursuant to the personal use agreement and the CBA. Lewis and the Estate each filed motions for declaratory judgment opposing Louisville Metro's position and asking the court to hold that Louisville Metro must indemnify Lewis for damages beyond $100,000 because Lewis was acting within the scope of his employment at the time of the accident.

On September 8, 2014, the trial court granted Braden's and Lewis's motions for declaratory judgment, reasoning that, at the time of the accident, Lewis was operating his vehicle in compliance with LMPD's standard operating procedures (SOPs) regarding its take-home vehicle policy. For

---

1. Lewis struck out the word "will" and handwrote "may" in its place. He then initialed this change, and both he and then-Chief Robert White signed the personal use agreement.

this reason, the trial court concluded that Lewis "was acting within the scope of his employment at the time of the accident" for purposes of the Claims Against Local Governments Act (CALGA). KRS 65.200, *et seq.* The trial court subsequently overruled Louisville Metro's motion to alter, amend, or vacate; and this appeal follows. We shall relate additional facts as they become necessary to our analysis.

## Standard of Review

■ The present controversy can be reasonably reduced to the following issues: whether Lewis was acting within the scope of his employment at the time of the accident and whether compliance with LMPD's SOPs is dispositive of that question under Kentucky law. While they rely upon certain facts contained in the record, these are largely questions of law which require our interpretation and application of Kentucky statutes, specifically, CALGA. Hence, we review the trial court's legal conclusion *de novo. See Richardson v. Louisville/Jefferson Cnty. Metro Gov't*, 260 S.W.3d 777, 779 (Ky. 2008), *citing Osborne v. Commonwealth*, 185 S.W.3d 645, 648 (Ky. 2006).

## Analysis

■ As a preliminary matter, we note that, on October 8, 2015, Louisville Metro filed a motion to dismiss this appeal as to John Lewis, arguing that Lewis's settlement with, and assignment of claims to, the Estate, divested him of his status as a "real party in interest" pursuant to CR [2] 17.01. A Motion Panel of this Court passed disposition of the motion to this panel, and we address it now.

■ CR 17.01 requires that "[e]very action shall be prosecuted in the name of the real party in interest . . . ." One Kentucky

Court has defined "the real party in interest" as the "one entitled to the benefits of action upon the successful prosecution thereof[,]" and required that any such party have "some right to protect which is not being protected." *Stuart v. Richardson*, 407 S.W.2d 716, 717 (Ky. 1966). This right "must be of a direct and immediate character so that the intervener will either gain or lose by the direct legal operation of the judgment." *Id.*, quoting 67 C.J.S. Parties § 57. Where a party completely assigns his rights and claims in a cause of action to another party or parties, the assignee becomes the owner of the cause of action and is the "real party in interest." *See Louisville & N. R. Co, v. Mack Mfg. Corp.*, 269 S.W.2d 707 (Ky. 1954), *citing Works v. Winkle*, 314 Ky. 91, 234 S.W.2d 312 (1950).

Lewis assigned the entirety of his claims and rights to the Estate upon settlement, thereby surrendering his status as a "real party in interest." In consideration for Lewis's settlement with the Estate, Lewis agreed to the "[a]ssignment to [the Estate] of Lewis's[s] rights and claims to full indemnification by and from Louisville Metro and against Louisville Metro as asserted in the Coverage Dispute and coverage from Louisville Metro . . . ." It follows that the result of this appeal and any subsequent rulings in this case could have no effect on Lewis's rights and obligations. He has nothing to "gain or lose." *Louisville & N.R. Co.* at 707. Therefore, Lewis is no longer a "real party in interest." That he or his brethren might have a "rooting" interest in the outcome of this appeal, or that Lewis attempted to reserve his continuing interest in the case in the Settlement Agreement, is insufficient to overcome this fundamental function of law.

For this reason, we grant Louisville Metro's Motion to Dismiss as to Lewis.

**2.** Kentucky Rules of Civil Procedure.

However, in the interest of maintaining a well-developed record, we elect against striking Lewis's brief, and will instead limit our review to those arguments the Estate presents on appeal.

## I. CALGA

In 1988, the General Assembly passed CALGA, which sought to protect current and former civil servants from the financial burden of litigation arising from their work for local governments. KRS 65.2001(2); *see also Richardson v. Louisville/Jefferson Cnty. Metro Gov't*, 260 S.W.3d 777, 781 (Ky. 2008). To that end, CALGA requires local governments to "provide for the defense of any employee ... in any action in tort arising out of an act or omission occurring within the scope of his employment ...." KRS 65.2005(1). "The local government shall pay any judgment based thereon or any compromise or settlement of the action ...." *Id.* However, a local government's obligation to indemnify its employee is limited under CALGA:

(3) A local government may refuse to pay a judgment or settlement in any action against an employee, or if a local government pays any claim or judgment against any employee pursuant to subsection (1) of this section, it may recover from such employee the amount of such payment and the costs to defend if:

(a) The employee acted or failed to act because of fraud, malice, or corruption;

(b) The action was outside the actual or apparent scope of his employment;

(c) The employee willfully failed or refused to assist the defense of the cause of action, including the failure to give notice to the executive authority of the local government ... ;

(d) The employee compromised or settled the claim without the approval of the governing body of the local government; or

(e) The employee obtained private counsel without the consent of the local government, in which case, the local government may also refuse to pay any legal fees incurred by the employee.

KRS 65.2005(3). Louisville Metro asserts that CALGA did not require Louisville Metro to indemnify Lewis beyond the amount provided in the personal use agreement and CBA because Lewis was acting outside the scope of his employment at the time of the accident. On this basis, Louisville Metro argues that the trial court erred when it denied its motion for declaratory relief while holding that Lewis was acting within the scope of his employment.

CALGA does not define the term "scope of employment." As a result, there is debate amongst the parties as to how this Court should analyze the paramount question of whether Lewis was operating within the scope of his employment when the accident occurred. Louisville Metro urges us to employ principles of agency and the doctrine of *respondeat superior*, while the Estate argues that such principles are inapplicable to CALGA. The Estate urges us to apply case law arising from the workers' compensation realm instead. Kentucky law favors Louisville Metro's proposed analysis.

In *City of Lexington v. Gray*, 499 S.W.2d 72 (Ky. App. 1973), the Court of Appeals, then sitting as Kentucky's highest Court, addressed a similar question arising from allegations of assault against an off-duty officer who confronted a citizen for personal reasons and then attempted to arrest her when she became "loud and abusive." While it found the city was liable for the officer's actions, the Court in *Gray* summarily answered the question of whether the proof at trial had established an "employer-employee relationship," and it cited to another case, *City of Lexington*

*v. Yank*, 431 S.W.2d 892 (Ky. 1968). In *Yank*, the Court addressed similar facts in more detail.

Though it initially did so in the context of a sovereign immunity question, the Court in *Yank* expressly concluded that "principle-agent and master-servant relationships within the scope of the respondeat superior doctrine do exist between a municipal corporation and its officers and employees." *Yank* at 894–95. The Court expressly applied the same doctrine when it answered the City of Lexington's argument that the trial court should have instructed the jury on limiting damages to those arising from injuries occurring within of the scope of the officer's employment. "What we have said about the doctrine of respondeat superior earlier in this opinion disposes of any other claim of error by appellant in this regard." *Yank* at 896. The Court of Appeals ultimately held that an instruction was unnecessary because the trial court had instructed the jury to absolve the officer of liability if it believed he "had stepped aside from his employment to accomplish some private purpose . . . ." *Id.*

■ Therefore, while the Estate wishes us to look beyond Kentucky for authority which favors the application of workers' compensation principles, we conclude there is case law from our Commonwealth which compels our application of *respondeat superior* principles in cases involving a question of municipal liability. *See, e.g., Ellis v. Jordan*, 571 S.W.2d 635 (Ky. App. 1978) (applying agency principles to issue of municipalities' liability for off-duty police officer's actions). These principles lend themselves more naturally to the facts and circumstances arising from CALGA cases at the heart of which lies the question of whether an employee acted within the scope of his employment, thereby obligating his employer to answer, and indemnify

him, for his actions. This is the very essence of an agency relationship, and principles of agency must govern.

■ "Scope of employment," as it is employed under the doctrine of *respondeat superior*, is relatively well-defined in Kentucky law. "The test as to the liability of the master is whether the servant was guilty of negligence in the doing of his master's work and whether the master had the right or power to control the servant in the performance of the act which caused the injury." *Horne v. Hall*, 246 S.W.2d 441, 443 (Ky. 1951). More specific to our context,

> it must therefore appear that the agent was acting within the scope of his authority at the time the act complained of occurred. . . . [A] municipality may or may not be liable for acts done or injuries inflicted by an off-duty policeman, depending on whether the policeman was acting in furtherance of the municipality's business and incident to the performance of his duties.

*Ellis*, 571 S.W.2d at 638.

## A. Whether Lewis Was Acting in Furtherance of Louisville Metro's Business

■ We first address the Estate's contention that a representative of Metro Government "admitted" that Officer Lewis was acting within the scope of his employment at the time of the accident. The Estate refers to the deposition testimony of Colonel Robison who stated that LMPD officers "can" be acting within the scope of their employment even when they are off-duty. Contrary to the Estate's argument, this was an "admission" of nothing, and it does nothing to alter our analysis or conclusion. That Lewis was "off-duty" at the time the accident with the Bradens occurred is uncontroverted in the record. Furthermore, we read CALGA as leaving

open the possibility that an officer can be off-duty but acting in furtherance of his employer's interests. The Courts in *Gray* and *Yank* confirm this.

The more imperative question is whether Lewis's actions immediately prior to the accident were in furtherance of Louisville Metro's business. The trial court's judgment did not address this vital question, and our review of the record and prevailing law causes us to answer it in the negative.

■ KRS 65.2001(1)(b) expressly states that conduct giving rise to a municipality's obligation to indemnify must occur while the employee is "acting within the scope of his employment or duties[.]" Likewise, KRS 65.2005(3)(b) permits a municipality to refuse to indemnify its employee if the employee's "action was outside the actual or apparent scope of his employment[.]" Not least because we are required to do so, we assume the General Assembly meant exactly what it said and that these words are not a legal nullity. *See, e.g., Shawnee Telecom Res., Inc. v. Brown*, 354 S.W.3d 542, 551 (Ky. 2011). In these provisions, the General Assembly clearly acknowledged and expressly provided that there is a point at which an employee is not acting in furtherance of his municipal employer's interests. Therefore, it is our task to determine whether Officer Lewis reached and crossed that point, based upon the facts before us and while giving effect to the statute's express purpose of protecting civil servants from financial hardship which truly arises from their employment.

Immediately prior to the accident in this case, Officer Lewis was off-duty; he had run two personal errands, had his children in the vehicle with him, and was on his way home; he was not responding to a call for assistance; he did not have his lights and sirens activated; and his vehicle was un-marked. Officer Lewis was performing no realizable police action at the time of the accident. LMPD did not even benefit from the presumed crime deterrence that typically accompanies the visibility of a marked police vehicle. Applying these facts to the appropriate legal analysis, we must conclude that Officer Lewis was *not* "acting in furtherance of the municipality's business and incident to the performance of his duties." *Ellis*, 571 S.W.2d at 638. At the time of the accident, he had "stepped aside from his employment to accomplish some private purpose ...." *Yank*, 431 S.W.2d at 896.

There is little question that LMPD derives some benefit from having its officers in or near their departmental vehicles, where they can monitor the radio and be ready to respond to calls for assistance, even while "off the clock." The Estate would have us conclude, almost exclusively from this single fact, that officers participating in the take-home car program are always acting within the scope of their employment and that municipalities are therefore liable for all actions taken by their officers, at all times, no matter how personal in nature the conduct and no matter how miniscule the benefit to the municipality. This cannot be the case, and it is not the law. The trial court's conclusion, on these facts, that Louisville Metro was obligated to indemnify Officer Lewis beyond the amount agreed to in the CBA and personal use agreement was a misinterpretation of CALGA; and it constitutes an untenable expansion of Louisville Metro's duty in the face of clear statutory language which relieves municipalities of that duty when an officer acts in furtherance of personal, and not public, business.

**B. LMPD's Standard Operating Procedures**

■ In its analysis, the trial court also attached undue significance to the fact that Lewis was operating within the confines of LMPD SOPs when the accident occurred. Even assuming, *ad arguendo*, that these SOPs constituted LMPD's "power to control the servant in the performance of the act which caused the injury[,]" *Horne*, 246 S.W.2d at 443, we have already concluded that the trial court's grant of declaratory judgment failed to satisfy, or even address, the first essential element of the requisite analysis. We have already concluded that Officer Lewis was not acting within the scope of his employment for purposes of CALGA. Under no circumstances could a municipal police department's SOPs supersede CALGA or create a duty to indemnify where state statute says there is none. That Lewis was operating in compliance with LMPD SOPs at the time of this accident could not, and did not, definitively compel Louisville Metro to defend and indemnify him for his actions under CALGA.

The relevant provisions of the personal use agreement and the CBA are binding. Even with Officer Lewis's slight amendment to the personal use agreement, in combination with the limitations imposed under CALGA, these documents limit the amount Louisville Metro must indemnify Lewis to $100,000.

**II. Louisville Metro's Defense of Lewis and Prior Claims**

■ We now address two additional arguments Braden asserts concerning Louisville Metro's defense of Lewis and its settlement of prior suits involving other defendants. The Estate first argues that, by providing a defense for Lewis at the outset of the civil suit, Metro Louisville admitted that Lewis was acting within the scope of his employment at the time of the accident. We disagree.

■ A local government's obligation to provide a defense for an employee implicated in a civil suit arising from his employment is clear, and it is absolute in the absence of a statutory exception. In the context of an insurance company and its claimant, Kentucky law imposes upon insurers "a duty to defend if there is any allegation which potentially, possibly[,] or might come within the coverage of the policy." *James Graham Brown Foundation, Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991). Metro Louisville's obligation to defend its employees is no different. *See Louisville/Jefferson Cnty. Metro Gov't v. Whitlock*, 2014–CA–000120–MR, 2015 WL 2445111 (Ky. App., May 22, 2015). We refuse to hold that a local government's good-faith effort to comply with CALGA can compromise its own interests or prospects in such a way. A chilling effect would result from such a holding, causing local governments to hesitate or outright refuse to offer a defense for employees if there was any doubt whatsoever that the employee's conduct fell within the scope of his employment. This would place municipal employees in greater individual legal and financial peril, not less. Such an approach is therefore in direct conflict with the spirit and intent of CALGA.

■ Metro Louisville's decision to provide Lewis a defense and simultaneously protect its interests under CALGA was altogether proper and consistent with both the letter and the spirit of that statute. The allegations against Lewis sufficiently invoked his duties as a public servant to cause Metro to offer a defense until it was determined that he was not in fact acting within the scope of his employment. It follows that this decision did not—indeed, it could not—constitute an admission of fact or an assumption of liability.

The Estate also argues that, by its settlement of prior suits involving separate facts and parties for amounts in excess of $100,000, Louisville Metro has waived assertion of its right to limit indemnity of Lewis pursuant to personal use agreement and the CBA. However, just as it was Louisville Metro's prerogative to commit itself contractually to indemnifying employees up to $100,000, the decision to settle cases and for how much also lies exclusively with Louisville Metro. Neither the Estate nor this Court could now hold Louisville Metro responsible for amounts paid even in cases arising from similar facts and legal realities. That Louisville Metro has previously paid above the $100,000 sum stated in the CBA has no bearing on this case, and it did not constitute waiver of Louisville Metro's argument that, under CALGA and the unique facts of this case, it was not required to pay in excess of $100,000.

## Conclusion

Ultimately, this case is not about the value or the wisdom of a municipal police department's take-home car program. This case concerns the interpretation and application of a statute which sets the parameters for a municipality's obligation to its employees. It is our conclusion that CALGA clearly defines when a municipality is required to indemnify its employee, and most importantly, when it is not so required. Officer Lewis was not operating within the scope of his employment with LMPD when his departmental vehicle collided with the Bradens' vehicle. Therefore, Louisville Metro was not obligated to indemnify Officer Lewis beyond the first $100,000 for which he was found liable.

We vacate the order of the Jefferson Circuit Court granting declaratory relief for the Estate. We remand the matter to the trial court for entry of an order grant-

ing declaratory relief in favor of Louisville Metro, as our conclusion regarding the question of "scope of employment" entitles Louisville Metro to judgment as a matter of law. Finally, Metro Louisville's Motion to dismiss the appeal as to Lewis is hereby GRANTED.

ALL CONCUR.